# STATE v. EARLVIN JOHNSON.

184 N. W. (2d) 660.

February 26, 1971—No. 41927.

*C. Paul Jones,* State Public Defender, *Roberta K. Levy,* Assistant State Public Defender, and *Doris Huspeni,* for appellant.

*Douglas M. Head,* Attorney General, *George M. Scott,* County Attorney, and *Henry W. McCarr, Jr.,* and *David G. Roston,* Assistant County Attorneys, for respondent.

Heard before Knutson, C. J., and Otis, Rogosheske, Peterson, and Rosengren, JJ.

PETERSON, JUSTICE.

Defendant, Earlvin Johnson, appeals from a judgment of conviction of taking indecent liberties with a 19-year-old unmarried minor. The criminal incident is the same as that considered in In re Spencer, 288 Minn. 119, 179 N. W. (2d) 95, involving several young men together with this defendant.

Two issues are raised: (1) Whether the testimony identifying defendant as one of the participants in the crime was sufficient to support the court's finding of guilt, particularly in the face of defendant's alibi; and (2) whether the trial judge erred in re-

ceiving into evidence, over objection and for purposes of impeachment, a prior inconsistent statement of a state's witness, an accomplice to the crime, refuting defendant's alibi.

1. The identification of defendant by the state's witnesses was so substantial and the alibi evidence of defendant so refuted by the state's evidence as not to warrant extensive recitation of the evidence. The victim, together with her female companion, testified to seeing the defendant at the place where the crime occurred at four different times prior to its occurrence. First, he was standing just outside the house when the girls first entered; second, they saw him in the same place when they left the house shortly thereafter; third, they saw him when they returned several hours later, at which time he was asleep on a couch in the living room of the house; and fourth, he was seen, still asleep, at a time immediately preceding the crime. More important, of course, the victim identified him as the person who thereafter twice engaged in a sexual assault upon her in the upstairs bedroom.

The alibi testimony of witnesses for the defense was, at best, vague and inconclusive. It was notably uncorroborated by the several other persons either at the house where the incident occurred or present at other places where the defendant purported to have been at the critical time.

This court, in any event, must take the evidence most favorable to the state and must assume that the trier of fact believed the state's witnesses and disbelieved anything that contradicted their testimony. State v. Thompson, 273 Minn. 1, 36, 139 N. W. (2d) 490, 515; State v. Chick, 192 Minn. 539, 257 N. W. 280; State v. Minot, 79 Minn. 118, 81 N. W. 753.

2. A Billy Bradford, a confessed participant in the crime, was called by the state as a witness in rebuttal of defendant's asserted alibi. When called as a witness, Bradford stated that he did not care to testify, but the trial judge ordered him to take the stand. When asked the names of the people who were present

at the house where the assault occurred, the following exchange took place:

"Q. [Counsel for the state.] Is it your testimony that the only people present were Carol, her baby, and Ira Russell—

"A. That ain't what I said.

"Q. Who else was there?

"A. I said me, Phillip, Ira, Carol, Exavier, and that's what I named.

"Q. Was there anybody else?

"A. I named them people and that's who I said was there, and that's all I have got to say."

When pressed for a more complete answer, Bradford finally answered: "No, there wasn't nobody else there."

The prosecutor, claiming surprise, was then permitted to read, over objection, a prior inconsistent statement of Bradford which did implicate defendant. Before making this prior inconsistent statement Bradford had been charged with offenses in addition to aggravated assault, but after signing the statement he had been permitted to plead guilty to aggravated assault, and the other charges were dismissed.

The use of this impeachment evidence is clearly consistent with the requirements stated in State v. Saporen, 205 Minn. 358, 285 N. W. 898, as well as State v. Dahlgren, 259 Minn. 307, 107 N. W. (2d) 299. The circumstances warranted the trial judge's impression that the state was genuinely surprised by Bradford's testimony. It had no pretrial notice that Bradford would repudiate his prior statement. Although the state knew at the outset of Bradford's testimony that he did not wish to testify, that reluctance was not notice that he would recant his prior statement if ordered to testify. Whether or not there is genuine surprise, as we stated in State v. Guy, 259 Minn. 67, 73, 105 N. W. (2d) 892, 897, "presents a preliminary question for determination by the trial court, and ordinarily we will not reverse unless there is an abuse of discretion." The use made of Bradford's prior inconsistent

statement is not subject to criticism on any other ground. The impeachment was scrupulously confined to the subject matter of the surprising adverse statement. We may assume that the trial judge, hearing the case without a jury, gave it only its proper negative effect rather than assigning it any weight as affirmative evidence of the fact stated. Nothing in the circumstances of the trial would indicate that the state was undertaking unfairly, under the guise of impeachment, to inject hearsay statements simply to bolster a weak case.

Affirmed.