**STATE of Minnesota, Respondent,**

v.

**Ross HARTWIG, Appellant.**

**No. C6–84–240.**

Court of Appeals of Minnesota.

Oct. 2, 1984.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Michael L. Samuelson, Asst. City Atty., St. Cloud, for respondent.

John T. Lund, Schmidt & Lund, St. Cloud, for appellant.

Considered and decided by SEDGWICK, P.J., and HUSPENI and NIERENGARTEN, JJ., with oral argument waived.

### OPINION

HUSPENI, Judge.

Appellant Ross Hartwig was found guilty after trial to the court of violating Minn.Stat. § 609.746 (1982), violation of pri-

vacy. On appeal, he challenges the sufficiency of evidence presented at trial. We affirm.

### FACTS

Hartwig was employed by Steamatic, a company hired by complainant Michelle Meintsma's family to clean up a fuel oil spill in their basement. Hartwig had occasionally been assigned to this job. Oil-soaked building materials were removed from the basement and placed in piles in back of the house.

On October 6, 1983, at about 3:00 p.m., complainant Meintsma was watching television in her home. She saw Hartwig walk by the house in the alley, and thought he looked familiar. He turned around and walked past the house again, "staring directly in at the window, and I was standing there watching him, and he didn't take his eyes off me the entire time he walked by." In her words, "and then he came up along * * * the street side of my house * * * on our property. * * * And then he walked up to the front of the house * * * on the sidewalk * * * and he came through our driveway and went back on the other side of our house and went to the back yard * * just looking at the house * * * into the house."

There are tall bushes close to the house on the driveway side. These bushes are about shoulder height. As Meintsma described it, "[a]nd when he came along that side, we've got big windows on that side, too, and the curtains were closed on that side and the sun was shining really bright and I could see him walking past, and then he got to the corner of that house—of the house and just stood there, and I could see him bending over and peeping around, and if you would peep right around, that's where I was sitting, right in that corner watching TV."

Meintsma told her mother what was happening, and then decided to go outside to talk to Hartwig. "And so when I opened the door and I walked over to the corner, he was already almost all the way to the front, or the front part of the house, and I asked him, 'Is there something I can help you with,' and he just kept walking, and I said, 'Hey, I want to know what you want,' and he still kept walking, and by this time he was in the neighbor's yard, and then I was starting to get really upset. I knew he was up to something, and I started screaming, and I said, 'I want to know what you're doing lurking around our house,' and he took off running and I took off running after him." Meintsma chased him for about a block, yelled that she recognized him and was going to call the police, and then went home. About an hour later, she remembered that he was one of the Steamatic employees.

Hartwig claims that earlier in the week a neighbor of the Meintsmas told him that he could smell fuel in the alley behind the Meinstma home. Concerned, Hartwig included the Meinstma home as part of his jogging route the afternoon of October 6. He testified that he did walk around the home as Michelle described, but that all the time he was sniffing the air and checking the debris in back of the house. Hartwig testified he could not remember looking into the house, and that if he did, it was an accident. He testified that he neither saw nor heard Meinstma, due to his Walkman headset, and continued jogging. Meinstma testified that she did not see a headset.

After hearing the evidence, the trial judge stated:

> [I]f indeed he was there for the purpose of checking out the pile at the southeast corner of the Meintsma home, then there was absolutely no reason why he had to take the most circuitous route possible to check that pile out. He went almost three hundred sixty degrees around that house, passed a very narrow corridor on the south side of the house to supposedly look at a pile that he could have reached by very directly walking from the alley to the pile, a distance probably of no more than fifty feet, whereas the route he took had to encompass something closer to several hundred feet. I find the Defendant's testimony totally incredible. I therefore reject it entirely. I find that

he did look in the house, that there was surreptitiousness in that there was [sic] heavy bushes preventing anyone from seeing him from the neighboring home, even though it was in the daylight, and that he did look into the home, and that his intent was to intrude upon the privacy of the members of that household. There can be no other explanation for his peeping in under those circumstances.

## ISSUE

Whether the evidence supported the verdict that Hartwig was guilty of a violation of privacy.

## ANALYSIS

 In reviewing the evidence, this court must assume the trier of fact believed the witnesses supporting the verdict and disbelieved any contradictions. *State v. Johnson*, 289 Minn. 346, 347, 184 N.W.2d 660, 661 (Minn.1971); *see State v. Thurmer*, 348 N.W.2d 776 (Minn.App.1984). The trial judge here stated that he did exactly that.

Minn.Stat. § 609.746 (1982) provides:

Any person who enters upon another's property and surreptitiously gazes, stares or peeps in the window of a house or place of dwelling of another with intent to intrude or interfere with the privacy of a member of the household thereof is guilty of a misdemeanor.

*Id.* Hartwig admits he entered the Meinstma property, but claims that he did not act surreptitiously or with the intent to interfere with anyone's privacy.

 Webster's Unabridged Dictionary defines "surreptitiously" as "by stealth, without authority, secret." Meintsma's testimony supports all elements of the crime—entering another's property and surreptitiously gazing around corners into the windows from protected spots. Intent can be reasonably inferred from the circumstances of his running away and his full circle of the house. *State v. Schweppe*, 306 Minn. 395, 401, 237 N.W.2d 609, 614 (1973).

## DECISION

The trial court's findings are reasonably supported by the evidence.

Affirmed.