**STATE of Minnesota, Respondent,**

v.

**Robert David BJERGUM, Appellant.**

**No. A08–912.**

Court of Appeals of Minnesota.

Aug. 25, 2009.

Lori Swanson, Attorney General, Kimberly R. Parker, Assistant Attorney General, St. Paul, MN; and Suzanne M. Bublitz, Houston County Attorney, Caledonia, MN, for respondent.

Marie L. Wolf, Interim Chief Appellate Public Defender, Roy G. Spurbeck, Assistant Public Defender, St. Paul, MN, for appellant.

Considered and decided by
SCHELLHAS, Presiding Judge; ROSS, Judge; and LARKIN, Judge.

## OPINION

ROSS, Judge.

This appeal requires us to decide whether a defendant who threatened to bring guns to his former workplace and open fire was entitled to a jury instruction relating to voluntary intoxication when his criminal charge for making a terroristic threat was premised on his recklessness. Robert Bjergum was charged with two counts of terroristic threats; the first count was for making terroristic threats with the intent to terrorize and the second count was for making terroristic threats "in a reckless disregard of the risk of causing such terror." The district court gave a voluntary-intoxication instruction for the first count but refused to give the instruction for the second. Bjergum appeals, arguing that the voluntary-intoxication statute justified the instruction because "reckless disre-

gard" is a state of mind contemplated by the statute. We conclude that the voluntary-intoxication statute regards only specific-intent crimes and that the crime of recklessly making terroristic threats is not a specific-intent crime. We therefore affirm.

## FACTS

Robert Bjergum arrived at work intoxicated on July 30, 2007, and he was sent home. His employer, Northern Engraving, terminated his employment for violating work rules. His former coworker, E.H., saw Bjergum approximately one month later drinking at a bar, and E.H. spoke with him. Bjergum was disappointed that he had not received unemployment benefits, and he told E.H., "[T]hings better start happening pretty soon or [I am] going to go down to the plant and [I] might go postal on the plant if [I] didn't get [my] unemployment." E.H. explained that "going postal" was an improper way to approach the problem, but Bjergum replied, "Well, that is my way," and, "I have the guns to do it." E.H. knew that Bjergum had numerous guns, but she did not report this conversation to Northern Engraving.

Two weeks later, E.H.'s husband, S.H., saw Bjergum drinking at the same bar and learned that Bjergum was still trying to obtain unemployment benefits. S.H. advised Bjergum to look for other work. Bjergum replied, "No, I am going to get it," and he elaborated by saying, "I have got 44 guns and I know which one I am going to take to the plant and if I [don't] get my unemployment, somebody isn't going to be going home." S.H. was concerned because his wife and sons worked at the plant. He had heard of a prior murder-suicide that occurred at a Northern Engraving establishment in Wisconsin, and he knew that Bjergum had numerous guns. S.H. told Bjergum that his state-

ments sounded like terroristic threats. Bjergum then repeated his statements. S.H. told E.H. about the conversation, and E.H. told staff at Northern Engraving the next day. A Northern Engraving manager called the company's corporate office and the police. E.H. and S.H. gave written statements about Bjergum's comments.

The police secured the Northern Engraving branch where Bjergum had worked and obtained a search warrant for Bjergum's home. The search uncovered 29 guns and some ammunition. Bjergum told police that he had threatened no one but that "his mouth gets stupid." The state charged Bjergum with one count of terroristic threats under Minnesota Statutes section 609.713, subdivision 1 (2006). After Bjergum sought to present an intoxication defense, the state amended the complaint to include two counts of terroristic threats and one count of disorderly conduct under Minnesota Statutes section 609.72, subdivision 1(3) (2006).

At trial, the jury heard testimony from E.H., S.H., police officers, and Northern Engraving corporate employees. Bjergum did not testify. The district court issued a voluntary-intoxication instruction for the terroristic-threats count involving "intent to terrorize" but refused to issue the instruction for the second terroristic-threats count involving "reckless disregard of the risk of causing such terror." The jury acquitted Bjergum of intentionally making terroristic-threats, but it convicted him of recklessly making terroristic threats and of disorderly conduct. Bjergum appeals.

## ISSUES

Did the district court abuse its discretion by refusing to issue a voluntary-intoxication jury instruction for a terroristic-threats charge premised on Bjergum's recklessness?

## ANALYSIS

Bjergum challenges the district court's refusal to instruct the jury to consider his voluntary intoxication when evaluating whether he was guilty of recklessly making a terroristic threat. He contends the district court should have given the instruction because he maintains that "reckless disregard" constitutes a state of mind contemplated by Minnesota Statutes section 609.075 (2006).

A person commits a terroristic-threats crime when he "threatens, directly or indirectly, to commit any crime of violence with purpose to terrorize another ... or in a reckless disregard of the risk of causing such terror or inconvenience." Minn.Stat. § 609.713, subd. 1. A person's voluntary intoxication can be considered in determining his intent or state of mind if the offense includes "a particular intent or other state of mind [as] a necessary element to constitute a particular crime." Minn.Stat. § 609.075. Because the district court interpreted "reckless disregard" in the terroristic-threats statute as indicating a general rather than a specific-intent crime, it refused to give the instruction. Bjergum asks us to fault that interpretation. We do not.

We review issues of statutory construction de novo. *State v. Koenig,* 666 N.W.2d 366, 372 (Minn.2003). The goal of statutory interpretation is to give effect to legislative intent. *Nestell v. State,* 758 N.W.2d 610, 613 (Minn.App.2008); *see* Minn.Stat. § 645.16 (2008). Statutory construction requires the statute's words and phrases to be read according to their ordinary and plain meaning. *Koenig,* 666 N.W.2d at 372. If the legislative intent is unclear from the statute's text, we may look for the intent elsewhere, such as other analogous laws, various interpretations of the law, the purpose of the law, the harm

to be avoided, and the ramifications of an interpretation. *Nestell,* 758 N.W.2d at 613; *see* Minn.Stat. § 645.16.

■ Our decision rests on our view that the statute is unambiguous, but some background is necessary. We first consider previous applications of Minnesota Statutes section 609.075. At common law, voluntary intoxication could not be a defense to a criminal charge. *City of Minneapolis v. Altimus,* 306 Minn. 462, 467, 238 N.W.2d 851, 855 (1976). In *Altimus,* the supreme court noted that "voluntary intoxication is a defense to a criminal charge ... if a specific intent or purpose is an essential element of the crime charged and the trier of fact concluded that the defendant's intoxication deprived him of the specific intent or purpose requisite to the alleged offense," and it cited section 609.075 in a footnote. *Id.* at 466, 466 n. 4, 238 N.W.2d at 854–55, 855 n. 4; *see* Minn.Stat. § 609.075 (allowing juries to consider intoxication when determining the presence of "a particular intent or other state of mind" if that is "a necessary element" of a particular crime). On this precedent, we conclude that section 609.075 applies only to crimes that contain specific intent as an element. *See State v. Fortman,* 474 N.W.2d 401, 403–04 (Minn.App.1991) (stating that a voluntary-intoxication instruction will be given only if specific intent is one of the crime's essential elements); *see also State v. Kjeldahl,* 278 N.W.2d 58, 62 n. 10 (Minn.1979) (declining to reach question of voluntary intoxication after holding that specific intent was not an essential element for the crime of escape).

■ We must therefore determine whether making terroristic threats with reckless disregard for the consequences requires specific intent. A crime is a specific-intent crime when it requires the state to prove that the defendant's act was motivated by a "specific intent or pur-pose." *State v. Lindahl,* 309 N.W.2d 763, 766 (Minn.1981); *see also State v. Charlton,* 338 N.W.2d 26, 30 (Minn.1983) (stating that specific intent requires a person to have a purpose or conscious desire to cause a criminal result). Bjergum presents two theories contending that recklessly making terroristic threats contains a specific-intent element. Neither theory is convincing.

Bjergum first contends that the legislature's use of the word "threatens" in the terroristic-threats statute indicates a specific intent because *unintentional* threats do not exist. Although neither the terroristic-threats statute nor the applicable definitional statute defines "threat," caselaw defines a threat as a "declaration of an intention to injure another or his property by some unlawful act." *State v. Schweppe,* 306 Minn. 395, 399 237 N.W.2d 609, 613 (1975); *see* Minn.Stat. §§ 609.02 (2006 & Supp.2007) (defining phrases for chapter 609), .713 (2006) (listing elements for terroristic threats). And although Bjergum contends that there is no such thing as an unintentional threat, the statute clearly contemplates the possibility that a person's statement, though not *intentionally* terrorizing, may nevertheless "*risk* ... causing ... terror." Minn.Stat. § 609.713, subd. 1 (emphasis added).

■ For example, the statement, "I am going to kill you" is objectively a threat to commit homicide, but the context may establish something else. Although the context might convey an actual intent to kill, it also may indicate anger, or frustration without an intent to kill, or even humor. Whether a statement is a threat "turns on whether the communication in its context" would reasonably cause "apprehension that its originator will act according to its tenor." *Schweppe,* 306 Minn. at 399, 237 N.W.2d at 613 (quotation omitted) (internal quotation marks omit-

ted). We hold that declaring the intent to injure by an unlawful act constitutes a terroristic threat when the person who utters the statement recklessly disregards the risk of terrorizing another. We therefore reject Bjergum's argument that unintentional threats do not exist.

Bjergum next contends that the recklessness requirement in the second count of terroristic threats constitutes an "other" state of mind contemplated by the voluntary-intoxication statute. We disagree.

■ Recklessness requires deliberate action in disregard of a known, substantial risk. *State v. Cole*, 542 N.W.2d 43, 51–52 (Minn.1996). Other cases have recognized that criminal recklessness is distinct from specific intent. *See State v. Schmitz*, 559 N.W.2d 701, 704 (Minn.App.1997) (stating that recklessness does not include specific intent), *review denied* (Minn. Apr. 15, 1997); *State v. Zupetz*, 322 N.W.2d 730, 734 (Minn.1982) (observing that it seems illogical for crimes like attempt to commit manslaughter to exist because "there is no specific intent to commit the reckless or negligent act"). And the legislature has indicated that "when criminal intent is an element of a crime," that is, specific intent crimes, "such intent is indicated by the term 'intentionally,' the phrase 'with intent to,' the phrase 'with intent that,' or some form of the verbs 'know' or 'believe.'" Minn.Stat. § 609.02, subd. 9(1). The reckless-disregard portion of the terroristic-threats statute bears none of these indicators.

Additionally, although the standardized jury instruction is not controlling, its design at least sheds some light on the common understanding of the statute. The reckless-disregard jury instruction for a terroristic-threats charge requires no specific intent. Comparing this standardized instruction with the purpose-to-terrorize instruction is helpful. When the charge involves "the purpose to terrorize another," the standard instruction states, " 'With intent to terrorize' means to have the specific purpose or intention of causing extreme fear." 10 *Minnesota Practice*, CRIMJIG 13.107 (2006). The reckless-disregard instruction reads,

> "In reckless disregard of the risk of causing such terror" means that the defendant, *even though not having the specific purpose of terrorizing another*, recklessly risks the danger that the statements would be taken as threats by another and that they would cause extreme fear. It need not be proven that another actually experienced extreme fear.

*Id.* (emphasis added). This instruction reflects the absence of a specific-intent element in the recklessness-related terroristic-threats crime.

■ Because threats are context specific, a person who might lack a specific intent to threaten or terrorize may nevertheless utter an objectively threatening statement recklessly, committing a terroristic-threats crime. By acting without regard to a known, substantial risk, a person's threats, however intended, may violate the statute. The terms "threatens" and "reckless disregard" do not transform the recklessness-related portion of the terroristic-threats statute into a specific-intent crime.

■ Because the reckless-disregard portion of the terroristic-threats statute does not include specific intent as an element, the voluntary-intoxication instruction was not warranted. *See State v. Torres*, 632 N.W.2d 609, 616 (Minn.2001) (determining that the district court must give a requested voluntary-intoxication jury instruction only when, among other things, the defendant is charged with a specific-intent crime); *Fortman*, 474

N.W.2d at 403–04 (stating that a voluntary-intoxication instruction will be given only if specific intent is one of the charged crime's essential elements). The district court accurately applied the law and did not abuse its discretion by refusing to give the voluntary-intoxication instruction for Bjergum's crime of recklessly making terroristic threats.

## DECISION

The district court properly denied Bjergum's request for a voluntary-intoxication instruction on his terroristic-threats count involving reckless disregard. Because recklessly making terroristic threats is not a specific-intent crime and because the voluntary-intoxication statute only applies to specific-intent crimes, we affirm Bjergum's conviction.

**Affirmed.**