# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-2171

_____

Ribelino Alberto Avendano, also known as Ribelino Flores-Avendano,

*Petitioner*,

v.

Eric H. Holder, Jr., Attorney General of the United States,

*Respondent*.

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

Submitted: March 11, 2014
Filed: October 27, 2014

_____

Before COLLOTON, SHEPHERD, and KELLY, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Ribelino Avendano, a native and citizen of El Salvador, petitions for review of a decision of the Board of Immigration Appeals. After an immigration judge ordered Avendano removed to El Salvador, the Board on administrative appeal concluded that Avendano was ineligible for cancellation of removal because he had been convicted of a crime involving moral turpitude. The Board also rejected his request to remand the case for the immigration judge to consider claims for asylum, withholding of

removal, and relief under the Convention Against Torture. We conclude that the Board permissibly categorized Avendano's offense of making terroristic threats in Minnesota as a crime involving moral turpitude, and that his remaining arguments are without merit. We therefore deny Avendano's petition.

## I.

Avendano entered the United States from El Salvador illegally in 1998. He later received temporary protected status and protection from removal under 8 U.S.C. § 1254a based on the Attorney General's determination that El Salvador was "unable, temporarily, to handle adequately the return of its nationals," due to a series of severe earthquakes. Designation of El Salvador Under Temporary Protected Status Program, 66 Fed. Reg. 14,214 (Mar. 9, 2001) (internal quotation omitted). Avendano's attorney told the immigration judge that Avendano lost protected status following his conviction in 2007 for driving while impaired. Before the incident giving rise to removal proceedings, he resided for several years in Minnesota with his live-in girlfriend, whom he considered his wife, and their three United States citizen children.

In January 2012, during an argument with his girlfriend in the presence of their children, Avendano grabbed a knife and told his girlfriend to follow him into the bathroom. Avendano's girlfriend instructed one of the children to call the police; officers came and arrested Avendano. He pleaded guilty to making terroristic threats in violation of Minn. Stat. § 609.713 subd. 1. That statute, in relevant part, forbids "threaten[ing], directly or indirectly, to commit any crime of violence with purpose to terrorize another . . . or in a reckless disregard of the risk of causing such terror." A threat, as used in the statute, "is a declaration of an intention to injure another or [her] property by some unlawful act." *State v. Schweppe*, 237 N.W.2d 609, 613 (Minn. 1975). At his plea hearing, Avendano claimed he was threatening only to commit suicide, but it was an element of the crime that he threatened another, and he admitted that his girlfriend reasonably felt threatened by his actions.

The Department of Homeland Security initiated removal proceedings several months later. Through his first counsel, Avendano conceded that he was removable and that making terroristic threats was a crime involving moral turpitude that precludes cancellation of removal. The immigration judge determined that Avendano should be removed to El Salvador.

On administrative appeal, represented by new counsel, Avendano disputed that his Minnesota crime involved moral turpitude. He also sought a remand for the immigration judge to consider either temporary protected status or asylum and related benefits. A request for asylum is deemed also to constitute a request for withholding of removal. 8 C.F.R. § 1208.3(b).

The Board determined that Avendano had been convicted of a crime involving moral turpitude and was therefore ineligible for cancellation of removal. The Board also declined to remand for the immigration judge to consider asylum, explaining that Avendano failed to meet the rigorous standards for a motion to reopen. In addition, the Board cited the immigration judge's conclusion that Avendano's theory for asylum and withholding of removal based on fear of gang recruitment in El Salvador was foreclosed by decisions of the Board and this court. The Board explained that Avendano was ineligible for temporary protected status as a consequence of his felony conviction, 8 C.F.R. § 1244.4(a), and rejected any claim for relief under the Convention Against Torture as inadequately alleged.

Avendano petitions for review, challenging the Board's decision on cancellation of removal and its refusal to remand for further consideration of his claims for asylum, withholding of removal, and relief under the Convention Against Torture.

II.

A.

The Immigration and Nationality Act provides that an alien who is convicted of a crime involving moral turpitude is ineligible for cancellation of removal, where the offense is punishable by a sentence of one year or longer. 8 U.S.C. §§ 1229b, 1182(a)(2)(A)(i)(I). Congress did not define "crime involving moral turpitude," and the meaning of the phrase was left "to future administrative and judicial interpretation." *Franklin v. INS*, 72 F.3d 571, 572 (8th Cir. 1995) (quotation omitted).

In *Chanmouny v. Ashcroft*, 376 F.3d 810 (8th Cir. 2004), we upheld the Board's decision that an alien's offense of making terroristic threats in Minnesota was a crime involving moral turpitude. In that case, we assumed for the sake of analysis that the Minnesota statute on terroristic threats was "divisible" in the sense that term has been used by the Board, *id*. at 813—that is, a statute that "contains some offenses which involve moral turpitude and others which do not." *Id*. at 812 (quoting *In re Ajami*, 22 I. & N. Dec. 949, 950 (BIA 1999)). The Supreme Court in *Descamps v. United States*, 133 S. Ct. 2276 (2013), used the term "divisible" differently to mean a statute that "sets out one or more elements of the offense in the alternative." *Id*. at 2281. The Minnesota statute is divisible in the *Descamps* sense, because it provides alternative culpable mental states: "purpose to terrorize" and "reckless disregard of the risk of causing . . . terror." Minn. Stat. § 609.713 subd. 1. The alien in *Chanmouny* was convicted of acting with the "purpose to terrorize." 376 F.3d at 813-814.

Our opinion in *Chanmouny* explained that this court had approved the Board's "longstanding general definition" of a crime involving moral turpitude, which included "acts accompanied by 'a vicious motive or a corrupt mind.'" *Id.* at 814 (quoting *In re Ajami*, 22 I. & N. Dec. at 950). Applying that definition, we held that the Minnesota offense of "threatening a crime of violence against another person with

the purpose of causing extreme fear" fell "within the category of offenses requiring a vicious motive or evil intent." *Id.* Thus, the alien had been convicted of a crime involving moral turpitude. It was unnecessary to decide "whether the recklessness prong of the Minnesota statute implicates a crime of moral turpitude." *Id.* at 813.

In this case, Avendano was convicted under the recklessness prong of the same statute: He was guilty of threatening to commit a crime of violence in reckless disregard of the risk of causing terror in his girlfriend. In assessing whether that offense is a crime involving moral turpitude, the Board observed that since *Chanmouny*, "jurisprudence on the recklessness issue has evolved." Attorney General Mukasey issued a comprehensive opinion in *Matter of Silva-Trevino*, 24 I. & N. Dec. 687 (A.G. 2008), "clarifying the concept of moral turpitude and articulating a methodology for determining whether a particular offense is a crime involving moral turpitude." *Matter of Louissaint*, 24 I. & N. Dec. 754, 756 (BIA 2009). "According to the Attorney General, a crime involving moral turpitude involves reprehensible conduct committed with some degree of scienter, either specific intent, deliberateness, willfulness, or recklessness." *Id.* at 756-57 (citing *Silva-Trevino*, 24 I. & N. Dec. at 706 & n.5).

The Board ruled that in light of *Silva-Trevino* and *Louissaint*, Avendano's offense of uttering terroristic threats in reckless disregard of the risk of causing terror "involves the reprehensible conduct of terrorizing another person with a culpable mental state, and is a turpitudinous offense." Therefore, Avendano was ineligible for cancellation of removal.

Avendano asserts that it was not enough for the Board to find that his "reprehensible conduct" was committed with "reckless disregard." He argues that to qualify as a crime involving moral turpitude, the mental state "must be accompanied by a vicious motive or corrupt mind," which Avendano describes as "the second prong" of the governing definition. He draws on the Board's 1999 statement in *Ajami*,

quoted by this court in *Chanmouny*, that "'[a]mong the tests to determine if a crime involves moral turpitude is whether the act is accompanied by a vicious motive or a corrupt mind.'" 376 F.3d at 812 (quoting *Ajami*, 22 I. & N. Dec. at 950).

The Board, however, does not require the presence of "a vicious motive or a corrupt mind" as an essential element of a crime involving moral turpitude. *Ajami* itself said only that accompaniment of a vicious motive or a corrupt mind was "*among the tests*" used to categorize a crime, implying that there were other tests as well. More recently, the Attorney General opined that a finding of moral turpitude "requires that a perpetrator have committed the reprehensible act *with some form of scienter*," *Silva-Trevino*, 24 I. & N. Dec. at 706 (emphasis added), a basic definition that "has generated little if any disagreement by reviewing circuit courts." *Bobadilla v. Holder*, 679 F.3d 1052, 1054 (8th Cir. 2012). The Board subsequently ruled that "some degree of scienter" includes "specific intent, deliberateness, willfulness, *or recklessness*." *Louissaint*, 24 I. & N. Dec. at 757 (emphasis added). This court likewise has said that "the presence of absence of a corrupt or vicious mind is not controlling." *Hernandez-Perez v. Holder*, 569 F.3d 345, 348 (8th Cir. 2009) (internal quotation omitted).

As this court observed in *Franklin*, "the BIA decided years ago that when criminally reckless conduct requires a conscious disregard of a substantial and unjustifiable risk to the life or safety of others, although no harm was intended, the crime involves moral turpitude for immigration purposes." 72 F.3d at 572; *see, e.g.*, *Matter of Leal*, 26 I. & N. Dec. 20, 23 (BIA 2012). The "reckless disregard" required to violate the Minnesota terroristic threats statute corresponds with the Board's contemplation of recklessness: "Recklessness requires deliberate action in disregard of a known, substantial risk." *State v. Bjergum*, 771 N.W.2d 53, 57 (Minn. Ct. App. 2009).

This court has concluded that the Board reasonably defined "crime involving moral turpitude" to encompass offenses committed with a mental state of recklessness. *Franklin*, 72 F.3d at 573. The Board was thus not required to find in addition that Avendano acted with a "vicious motive" or a "corrupt mind." It was permissible for the Board, consistent with *Silva-Trevino*, to conclude that Avendano's admission that he acted with reckless disregard of the risk that he would cause terror in his girlfriend was sufficient to satisfy the scienter requirement for turpitudinous offenses.

Avendano does not challenge the Board's conclusion that threatening a crime of violence with the risk of terrorizing another person is "reprehensible conduct" within the meaning of *Silva-Trevino*'s definition of a crime involving moral turpitude. In situations where an alien offender's scienter is recklessness, some decisions of the Board and this court have inquired whether the alien's offense also involves an "aggravating factor" that qualifies the offense as a crime involving moral turpitude. In *Silva-Trevino*, however, the Attorney General did not embrace that formulation. Instead, seeking to "rearticulate[] with greater clarity" the Board's definition, the Attorney General made clear that a crime involving moral turpitude must involve "reprehensible conduct and some degree of scienter." 24 I. & N. Dec. at 689 n.1.

Since *Silva-Trevino*, the Board has explained that "when we have held that a 'recklessness' mens rea required either serious bodily injury or some other aggravating factor to establish moral turpitude, it was in the specific context of *assault* offenses." *Matter of Ruiz-Lopez*, 25 I. & N. Dec. 551, 554 (BIA 2011); *see, e.g.*, *Godinez-Arroyo v. Mukasey*, 540 F.3d 848 (8th Cir. 2008). In a non-assault case after *Silva-Trevino*, the Board found unpersuasive an alien's contention that an offense of attempting to elude a police vehicle—committed with reckless disregard for the lives or property of others—must be coupled with the infliction of serious bodily injury as an aggravating factor. *Ruiz-Lopez*, 25 I. & N. Dec. at 554. In any event, the Attorney General in *Silva-Trevino* was not bound to follow the Board's previous construction of the statute, *see Nat'l Cable & Tel. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967,

981 (2005), and the Attorney General's decision to focus on "reprehensible conduct," without a separate inquiry into "aggravating factors," is a reasonable interpretation of the statute.

Avendano did not raise in this court an argument along the lines advanced by the partial dissent, and it is therefore waived. *See Chay-Velasquez v. Ashcroft*, 367 F.3d 751, 756 (8th Cir. 2004); Fed. R. App. P. 28(a)(8)(A). Avendano urged application of a modified categorical approach only in service of his contention that an offense committed in reckless disregard must be accompanied by a vicious motive or corrupt mind. The government responded to this argument, and we have concluded that Avendano's contention is without merit. If an alien in a future case wishes to assert that making a bomb threat in a school or making a threat to kill out of "transitory anger"—with reckless disregard of the risk of causing terror—is not necessarily reprehensible conduct, *post*, at 13-14, and that the Minnesota statute therefore reaches conduct that does not involve moral turpitude, then it is open to the alien to urge that position before the Board. The parties have not joined that issue in this appeal.

## B.

Avendano also seeks review of the Board's denial of his request for a remand to the immigration judge to consider whether he is eligible for asylum and withholding of removal based on his fear of gang violence and gang recruitment in El Salvador. This court has no jurisdiction to review final orders of removal against aliens who have committed crimes involving moral turpitude, 8 U.S.C. § 1252(a)(2)(C), except to review constitutional questions or other issues of law. *Id.* § 1252(a)(2)(D); *see Hanan v. Mukasey*, 519 F.3d 760, 763 (8th Cir. 2008). Because Avendano was convicted of a crime involving moral turpitude, we have jurisdiction only if his challenge raises a constitutional issue or a question of law. *Purwantono v. Gonzales*, 498 F.3d 822, 824 (8th Cir. 2007).

In denying Avendano's request for a remand, the Board explained that a motion to remand filed during the pendency of an administrative appeal "must satisfy the same rigorous standards as a motion to reopen." *See Matter of Ige*, 20 I. & N. Dec. 880, 884 (BIA 1994). One of those standards forbids reopening for the purpose of allowing the alien to apply for any form of discretionary relief, "if it appears that the alien's right to apply for such relief was fully explained to him . . . and an opportunity to apply therefore was afforded at the former hearing, unless the relief is sought on the basis of circumstances that have arisen subsequent to the hearing." 8 C.F.R. § 1003.2(c)(1).

Asylum is a form of discretionary relief. 8 U.S.C. § 1158(b)(1). The Board ruled that Avendano's opportunity to seek asylum-related relief was addressed at the former hearing, and that he did not meet the standard for reopening based on new circumstances. Any challenge to this factual determination does not present a question of law, so we lack jurisdiction to consider Avendano's claim relating to asylum.

Withholding of removal, by contrast, is a form a mandatory relief. 8 U.S.C. § 1231(b)(3)(A). The Board concluded that Avendano failed to demonstrate that he was "prima facie eligible" for withholding of removal. The Board recounted the immigration judge's statement that if Avendano had sought withholding of removal based on fear of gang violence and gang recruitment in El Salvador, then the claim would have failed under precedent of the Board and this court.

An alien seeking withholding of removal must show that his life or freedom would be threatened based on a protected ground. These grounds include political opinion and membership in a particular social group. *Id.* This court held in *Constanza v. Holder*, 647 F.3d 749 (8th Cir. 2011) (per curiam), however, that "persons resistant to gang violence are too diffuse to be recognized as a particular social group." *Id.* at 754 (internal quotation omitted). Similarly, *Marroquin-Ochoma*

-9-

*v. Holder*, 574 F.3d 574 (8th Cir. 2009), held that opposition to a gang was not necessarily political, so the petitioner had not established that a gang's threats to her were based on her political opinion so as to constitute persecution. *Id.* at 578-79. And in *Menjivar v. Gonzales*, 416 F.3d 918 (8th Cir. 2005), we held that substantial evidence supported the Board's denial of a claim based on persecution due to gang violence, because the petitioner had not established that the government of El Salvador inflicted or was unable or unwilling to control the harm from gangs. *Id.* at 921-22. The immigration judge and the Board concluded that Avendano's claim would fail under these precedents.

Avendano does not challenge the Board's legal conclusion that claims for withholding of removal based on fear of "gang recruitment" and "gang violence" have been rejected by this court. He contends, rather, that the Board should have afforded him an opportunity to testify about the details of his fear, so that the Board could determine whether his case is governed by the precedents. The Board's determination whether Avendano presented sufficient grounds to reopen a hearing for that purpose, however, does not present a question of law or a constitutional claim over which we have jurisdiction. *Hanan*, 519 F.3d at 763. Avendano likewise raises no question of law concerning the Board's denial of relief under the Convention Against Torture.

\*       \*       \*

The petition for review is denied.

KELLY, Circuit Judge, concurring in part and dissenting in part.

I concur in Part II.B. of the court's opinion. With respect to the court's conclusion that "the Board permissibly categorized Avendano's offense of making terroristic threats in Minnesota as a crime involving moral turpitude," as addressed in Part II.A., I respectfully dissent.

Ribelino Avendano pleaded guilty to one count of making terroristic threats in violation of Minn. Stat. § 609.713 subd. 1.  This statute provides two mental states by which the statute may be violated: "Whoever threatens, directly or indirectly, to commit any crime of violence *with purpose to terrorize* another . . . or *in a reckless disregard of the risk of causing such terror . . .*" has violated the statute (emphasis added).  In Chanmouny v. Ashcroft, 376 F.3d 810, 814 (8th Cir. 2004), this court held that a conviction under the Minnesota terroristic-threats statute, when committed "with purpose to terrorize," qualifies as a crime involving moral turpitude. Chanmouny specifically did not decide "whether the recklessness prong of the Minnesota statute implicates a crime of moral turpitude."  Id. at 813.  Because Avendano pleaded guilty under the recklessness prong of the statue, that issue is now before us.

In determining that Avendano's prior conviction qualifies as a crime involving moral turpitude, the Board focused on whether the mens rea of recklessness is sufficient.  It noted that the "jurisprudence on the recklessness issue has evolved" since this court decided Chanmouny.  The Board cited Matter of Louissaint, which held that "a crime involving moral turpitude involves reprehensible conduct committed with some degree of scienter, either specific intent, deliberateness, willfulness, or recklessness."  24 I. & N. Dec. 754, 756–57 (BIA 2009) (citing Matter of Silva-Trevino, 24 I. & N. Dec. 687, 706 & n.5 (A.G. 2008)).  The Board concluded, as a result, that because the crime of making a terroristic threat in reckless disregard of the risk of causing terror "involves the reprehensible conduct of terrorizing another person with a culpable mental state," it is a crime involving moral turpitude.

Under the methodology adopted by the Attorney General for determining whether an offense is a crime involving moral turpitude, more is required from the immigration court than a determination of the necessary mens rea.  The immigration court also must determine if the crime involves "reprehensible conduct." See Silva-Trevino, 24 I. & N. Dec. at 689 n.1.  In Silva-Trevino, the Attorney General

adopted a three-step methodology for determining whether a crime involves reprehensible conduct and, therefore, may qualify as a crime involving moral turpitude.[1] Id. at 689–90. "First, in evaluating whether an alien's prior offense is one that categorically involves moral turpitude, immigration judges must determine whether there is a 'realistic probability, not a theoretical possibility,' that the State or Federal criminal statute pursuant to which the alien was convicted would be applied to reach conduct that does not involve moral turpitude." Id. (citing Gonzales v. Duenas-Alvarez, 549 U.S. 183, 193 (2007)). In this case, the first step for the immigration court, and subsequently the Board, was to determine whether there is a realistic probability that Minnesota would apply the recklessness element of its terroristic-threats statute to conduct that does not involve moral turpitude.[2] Neither the immigration court nor the Board conducted this analysis.

The court says that Avendano has not challenged the Board's conclusion that his conviction under Minn. Stat. § 609.713 subd. 1 of threatening a crime of violence with the risk of terrorizing another person is "reprehensible conduct" under Silva-Trevino's three-step analysis. Thus, the court concludes, he has waived that issue. But on appeal Avendano specifically asserts that "the Board failed to examine Mr. Avendano's record of conviction under the modified categorical approach," which

---

[1]This court expressly has recognized the Silva-Trevino methodology as "a reasonable interpretation of the statute" that "must be given deference by a reviewing court." Bobadilla v. Holder, 679 F.3d 1052, 1056 (8th Cir. 2013).

[2]If the answer is yes, the immigration judge must proceed to step 2 of the methodology, which is a modified categorical inquiry into "the alien's record of conviction, including documents such as the indictment, the judgment of conviction, jury instructions, a signed guilty plea, or the plea transcript." Silva-Trevino, 24 I. & N. Dec. at 699; see Bobadilla, 679 F.3d at 1056. If the inquiry cannot be resolved at step 2, the immigration judge may proceed to step 3 to "consider any additional evidence the adjudicator determines is necessary or appropriate to resolve accurately the moral turpitude question." Silva-Trevino, 24 I. & N. Dec. at 704; see Bobadilla, 679 F.3d at 1056.

is the analysis conducted at step 2 of the <u>Silva-Trevino</u> methodology, and so this court must "determine whether his conviction is a CIMT [crime involving moral turpitude] under" that second step. Moreover, the government expressly addresses Avendano's argument and concludes that his record of conviction—which is not reviewed until step 2 of the <u>Silva-Trevino</u> methodology—supports the conclusion that Avendano's crime involves moral turpitude. Thus, I believe that Avendano has preserved this challenge, and we should review de novo the Board's decision and legal analysis applied in reaching its decision. <u>See Olmsted v. Holder</u>, 588 F.3d 556, 558 (8th Cir. 2009).

To determine whether the Minnesota statute under which Avendano was convicted has been applied to conduct that does not involve moral turpitude, and thus whether that conviction involves reprehensible conduct, the Board should have reviewed "the history of adjudication" of the statute. <u>Silva-Trevino</u>, 24 I. & N. Dec. at 697; <u>see Bobadilla</u>, 679 F.3d at 1055–56. The Supreme Court of Minnesota has expressed concern about the statute's potential scope: "We caution concerning the potential sweep of Minn. St. 609.713 subd. 1, which, because of its broad language, carries with it the danger of prosecutorial abuse in that innocent or idle threats could be too easily construed to constitute a terroristic threat." <u>State v. Schweppe</u>, 237 N.W.2d 609, 617 n.4 (1975).

A review of Minnesota case law shows there is reason for concern. For example, even "a joke or a flippant remark" may violate the statute. <u>See In re MJS</u>, No. C3-00-76, 2000 WL 1015886, at *2 (Minn. Ct. App. July 25, 2000) ("Whether or not appellant wrote the words ['Bomb on Monday' on a gym locker at school] as a joke or a flippant remark, he recklessly disregarded the likelihood that his statement would terrorize others at the high school.") Also, though a remark made as a result of "transitory anger" would not be sufficient to support a conviction for a terroristic threat made "with purpose to terrorize," such remark could support a conviction under the recklessness prong. <u>See State v. Balster</u>, No. A06-1742, 2008 WL 134984, at *4

(Minn. Ct. App. Jan. 15, 2008) (rejecting request for "transitory anger" instruction because, though defense may negate mens rea of specific intent, it does not necessarily negate mens rea of reckless disregard); see also State v. Sailee, No. C3-98-1744, 1999 WL 486597 (Minn. Ct. App. July 13, 1999) (affirming conviction of making terroristic threat because defendant's words and hand gesture "had a reasonable tendency to cause fear of a future act of violence"; dissent would reverse because meaning of words and gesture, both separately and in combination, was ambiguous and speculative); State v. Graf, No. A11-617, 2012 WL 987282 (Minn. Ct. App. Mar. 26, 2012) (reversing conviction for making terroristic threats because defendant's statements "amounted to an immature expression of frustration and misplaced humor, rather than an actual plan to kill," and thus were not threats under the statute).

Moreover, under Minnesota law a person may be convicted of acting in reckless disregard of the risk of causing terror in another person even if no one actually experienced terror. See State v. Bjergum, 771 N.W.2d 53, 57 (Minn. Ct. App. 2009). According to Minnesota's reckless-disregard instruction, "[i]t need not be proven that another actually experienced extreme fear." Id. Instead, a person need only "recklessly risk[] *the danger* that the statements would be taken as threats by another and that they would cause extreme fear." Id. (emphasis added). And because recklessly making a terroristic threat is a general-intent crime, a defendant may not assert voluntary intoxication as a defense and may thus be subject to prosecution for statements made even without any reckless intent. See id. (affirming conviction for disgruntled man who, after being fired for showing up intoxicated to work, later made threatening statements while drinking in a bar).

Congress has not defined "crimes involving moral turpitude." Villatoro v. Holder, 760 F.3d 872, 875 (8th Cir. 2014) (quotation omitted). We have, however, recognized the Board's general definition:

-14-

Moral turpitude refers generally to conduct which is inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general. Moral turpitude has been defined as an act which is per se morally reprehensible and intrinsically wrong or malum in se. . . . Among the tests to determine if a crime involves moral turpitude is whether the act is accompanied by a vicious motive or corrupt mind.

Bobadilla, 679 F.3d at 1054 (quoting Chanmouny, 376 F.3d at 811–12). Given this definition, and after a review of Minnesota case law addressing the statute, I believe there is a realistic probability that Minnesota would apply the recklessness element of its terroristic-threats statute to conduct that does not involve moral turpitude, i.e., conduct that is not "inherently base, vile, or depraved, and contrary to the accepted rule of morality and the duties owed between persons or to society in general." As a result, the immigration court, and the Board, should have proceeded to step 2 of the Silva-Trevino methodology. Therefore, I would grant the petition and remand for further proceedings to determine whether, at step 2 of the Silva-Trevino procedural framework—or step 3, if necessary—Avendano's crime involves reprehensible conduct and thus qualifies as a crime involving moral turpitude.

_____