*738 KELLY, Circuit Judge,
concurring in part and dissenting in part.
I concur in Part II.B. of the court’s opinion. With respect to the court’s conclusion that “the Board permissibly categorized Avendano’s offense of making terroristic threats in Minnesota as a crime involving moral turpitude,” as addressed in Part U.A., I respectfully dissent.
Ribelino Avendano pleaded guilty to one count of making terroristic threats in violation of Minn.Stat. § 609.713 subd. 1. This statute provides two mental states by which the statute may be violated: “Whoever threatens, directly or indirectly, to commit any crime of violence with purpose to terrorize another ... or in a reckless disregard of the risk of causing such terror ...” has violated the statute (emphasis added). In Chanmouny v. Ashcroft, 376 F.3d 810, 814 (8th Cir.2004), this court held that a conviction under the Minnesota terroristic-threats statute, when committed “with purpose to terrorize,” qualifies as a crime involving moral turpitude. Chanmouny specifically did not decide “whether the recklessness prong of the Minnesota statute implicates a crime of moral turpitude.” Id. at 813. Because Avendano pleaded guilty under the recklessness prong of the statute, that issue is now before us.
In determining that Avendano’s prior conviction qualifies as a crime involving moral turpitude, the Board focused on whether the mens rea of recklessness is sufficient. It noted that the “jurisprudence on the recklessness issue has evolved” since this court decided’ Chanmouny. The Board cited Matter ofLouissaint, which held that “a crime involving moral turpitude involves reprehensible conduct committed with some degree of scienter, either specific intent, deliberateness, willfulness, or recklessness.” 24 I. & N. Dec. 754, 756-57 (BIA 2009) (citing Matter of Silva-Trevino, 24 I. & N. Dec. 687, 706 & n. 5 (A.G.2008)). The Board concluded, as a result, that because the crime of making a terroristic threat in reckless disregard of the risk of causing terror “involves the reprehensible conduct of terrorizing another person with a culpable mental state,” it is a crime involving moral turpitude. .
Under the methodology adopted by the Attorney General for determining whether an offense is a crime involving moral turpitude, more is required from the immigration court than a determination of the necessary mens rea. The immigration court also must determine if the crime involves “reprehensible conduct.” See Silvar-Trevino, 24 I. & N. Dec. at 689 n. 1. In SilvarTrevino, the Attorney General adopted a three-step methodology for determining whether a crime involves reprehensible conduct and, therefore, may qualify as a crime involving moral turpitude.[1] Id. at 689-90. “First, in evaluating whether an alien’s prior offense is one that categorically involves moral turpitude, immigration judges must determine whether there is a ‘realistic probability, not a theoretical possibility,’ that the State or Federal criminal statute pursuant to which the alien was convicted would be applied to reach conduct that does not involve moral turpitude.” Id. (citing Gonzales v. DuenasAlvarez, 549 U.S. 183, 193, 127 S.Ct. 815, 166 L.Ed.2d 683 (2007)). In this case, the first step for the immigration court, and subsequently the Board, was to determine whether there is a realistic probability that Minnesota would apply the recklessness element of its terroristic-threats statute to *739 conduct that does not involve moral turpitude.[2] Neither the immigration court nor the Board conducted this analysis.
The court says that Avendano has not challenged the Board’s conclusion that his conviction under Minn.Stat. § 609.713 subd. 1 of threatening a crime of violence with the risk of terrorizing another person is “reprehensible conduct” under Silva-Trevino’s three-step analysis. Thus, the court concludes, he has waived that issue. But on appeal Avendano specifically asserts that “the Board failed to examine Mr. Avendano’s record of conviction under the modified categorical approach,” which is the analysis conducted at step 2 of the Silvar-Trevino methodology, and so this court must “determine whether his conviction is a CIMT [crime involving moral turpitude] under” that second step. Moreover, the government expressly addresses Avendano’s argument and concludes that his record of conviction — which is not reviewed until step 2 of the Silvar-Trevino methodology — supports the conclusion that Avendano’s crime involves moral turpitude. Thus, I believe that Avendano has preserved this challenge, and we should review de novo the Board’s decision and legal analysis applied in reaching its decision. See Olmsted v. Holder, 588 F.3d 556, 558 (8th Cir.2009).
To determine whether the Minnesota statute under which Avendano was convicted has been applied to conduct that does not involve moral turpitude, and thus whether that conviction involves reprehensible conduct, the Board should have reviewed “the history of adjudication” of the statute. Silvar-Trevino, 24 I. & N. Dec. at 697; see Bobadilla, 679 F.3d at 1055-56. The Supreme Court of Minnesota has expressed concern about the statute’s potential scope: “We caution concerning the potential sweep of Minn. St. 609.713 subd. 1, which, because of its broad language, carries with it the danger of prosecutorial abuse in that innocent or idle threats could be too easily construed to constitute a terroristic threat.” State v. Schweppe, 306 Minn. 395, 237 N.W.2d 609, 617 n. 4 (1975).
A review of Minnesota case law shows there is reason for concern. For example, even “a joke or a flippant remark” may violate the statute. See In re MJS, No. C3-00-76, 2000 WL 1015886, at *2 (Minn. Ct.App. July 25, 2000) (“Whether or not appellant wrote the words [‘Bomb on Monday’ on a gym locker at school] as a joke or a flippant remark, he recklessly disregarded the likelihood that his statement would terrorize others at the high school.”) Also, though a remark made as a result of “transitory anger” would not be sufficient to support a conviction for a terroristic threat made “with purpose to terrorize,” such remark could support a conviction under the recklessness prong. See State v. Bolster, No. A06-1742, 2008 WL 134984, at *4 (Minn.Ct.App. Jan. 15, 2008) (rejecting request for “transitory anger” instruction because, though defense may negate mens rea of specific intent, it does not necessarily negate mens rea of reckless disregard); see also State v. Sailee, No. C3-98-1744, 1999 WL 486597 (Minn.Ct. App. July 13, 1999) (affirming conviction of making terroristic threat because defendant’s words and hand gesture “had a *740 reasonable tendency to cause fear of a future act of violence”; dissent would reverse because meaning of words and gesture, both separately and in combination, was ambiguous and speculative); State v. Graf, No. All-617, 2012 WL 987282 (Minn.Ct.App. Mar. 26, 2012) (reversing conviction for making terroristic threats because defendant’s statements “amounted to an immature expression of frustration and misplaced humor, rather than an actual plan to kill,” and thus were not threats under the statute).
Moreover, under Minnesota law a person may be convicted of acting in reckless disregard of the risk of causing terror in another person even if no one actually experienced terror. See State v. Bjergum, 771 N.W.2d 53, 57 (Minn.Ct.App.2009).According to Minnesota’s reckless-disregard instruction, “[i]t need not be proven that another actually experienced extreme fear.” Id. Instead, a person need only “recklessly risk[] the danger that the statements would be taken as threats by another and that they would cause extreme fear.” Id. (emphasis added). And because recklessly making a terroristic threat is a general-intent crime, a defendant may not assert voluntary intoxication as a defense and may thus be subject to prosecution for statements made even without any reckless intent. See id. (affirming conviction for disgruntled man who, after being fired for showing up intoxicated to work, later made threatening statements while drinking in a bar).
Congress has not defined “crimes involving moral turpitude.” Villatoro v. Holder, 760 F.3d 872, 875 (8th Cir.2014) (quotation omitted). We have, however, recognized the Board’s general definition:
Moral turpitude refers generally to conduct which is inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general. Moral turpitude has been defined as an act which is per se morally reprehensible and intrinsically wrong or malum in se.... Among the tests to determine if a crime involves moral turpitude is whether the act is accompanied by a vicious motive or corrupt mind.
Bobadilla, 679 F.3d at 1054 (quoting Chanmouny, 376 F.3d at 811-12). Given this definition, and after a review of Minnesota case law addressing the statute, I believe there is a realistic probability that Minnesota would apply the recklessness element of its terroristic-threats statute to conduct that does not involve moral turpitude, i.e., conduct that is not “inherently base, vile, or depraved, and contrary to the accepted rule of morality and the duties owed between persons or to society in general.” As a result, the immigration court, and the Board, should have proceeded to step 2 of the Silvar-Trevino methodology. Therefore, I would grant the petition and remand for further proceedings to determine whether, at step 2 of the Silvar-Trevino procedural framework — or step 3, if necessary — Avendano’s crime involves reprehensible conduct and thus qualifies as a crime involving moral turpitude.

. This court expressly has recognized the Silva-Trevino methodology as "a reasonable interpretation of the statute” that "must be given deference by a reviewing court.” Bobadilla v. Holder, 679 F.3d 1052, 1056 (8th Cir.2012).

. If the answer is yes, the immigration judge must proceed to step 2 of the methodology, which is a modified categorical inquiry into "the alien’s record of conviction, including documents such as the indictment, the judgment of conviction, jury instructions, a signed guilty plea, or the plea transcript.” Silva-Trevino, 24 I. & N. Dec. at 699; see Bobadilla, 679 F.3d at 1056. If the inquiry cannot be resolved at step 2, the immigration judge may proceed to step 3 to "consider any additional evidence the adjudicator determines is necessary or appropriate to resolve accurately the moral turpitude question.” Silva-Trevino, 24 I. & N. Dec. at 704; see Bobadilla, 679 F.3d at 1056.