*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1869**

State of Minnesota,
Respondent,

vs.

Bayyinah Jameelah Shelton,
Appellant.

**Filed September 26, 2016
Affirmed
Rodenberg, Judge**

Stearns County District Court
File No. 73-CR-14-4020

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Janelle P. Kendall, Stearns County Attorney, Michael J. Lieberg, Assistant County Attorney, St. Cloud, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Suzanne M. Senecal-Hill, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Larkin, Presiding Judge; Rodenberg, Judge; and Randall, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**RODENBERG**, Judge

Appellant Bayyinah Jameelah Shelton challenges her conviction of terroristic threats, arguing that the state failed to prove the requisite mental state under the charging statute. Because the record supports the fact-finder's determination that appellant recklessly disregarded the risk of terrorizing others, we affirm.

## FACTS

Appellant had a pending Social Security claim and, on May 15, 2014, she telephoned the St. Cloud Social Security office and left this voicemail message:

> Bayyinah Shelton, [Social Security number redacted], I'm gonna kill everybody, I'm sick [of] you guys f---ing with me for no g--d--n reason, I didn't even submit a f---ing claim so I don't know why you guys are even riding me and telling me some bulls---, and I didn't even f---ing submit a g--d--n claim, so why the f--- are you guys riding me? Call me back and I might try to kill you guys, [appellant's telephone number], you're starting f---ing war (indiscernible) killing all you f---ing white people, I'm sick of this stupid sh--.

The Social Security worker who received the voicemail message, K.S., was distraught upon listening to it, and reported the message to her supervisor. Police investigated the complaint and eventually arrested appellant for terroristic threats. Appellant admitted to police that she contacted "St. Cloud Social Services" and stated that she would kill herself if they didn't stop sending her mail. Appellant appeared hysterical and made other suicidal comments when arrested.

The state charged appellant with terroristic threats (reckless disregard of risk) under Minn. Stat. § 609.713, subd. 1 (2012).[1] Appellant waived her right to a jury trial. At trial, the state introduced the voicemail evidence and testimony from K.S. and an investigating officer. K.S. testified that she had sent appellant several letters, which included her office address and direct telephone number, concerning appellant's claim. K.S. testified that she believed she and her office were threatened by appellant, that the message was "very concerning," and that she felt "stressed" and "nervous" after listening to it. K.S. contacted her supervisor, who in turn notified local police, the office security guard, and Federal Protective Services.

Appellant first testified that she had no recollection of the day the threatening message was left. She later testified that she remembered interacting with police officers at her residence. Appellant believed she had left the message and described it as shocking and disturbing. Appellant claimed that she contacted the Social Security office because she was trying to figure out what was wrong with her mental health, and thought that she had left the message in a "dream state."

The district court found appellant guilty of terroristic threats (reckless disregard of risk), and sentenced her to one year in jail, with all but 60 days stayed, and two years of probation, during which mental-health supports were required as a condition of probation. This appeal followed.

---

[1] The offense was restyled as "threats of violence" by 2015 legislation. Minn. Stat. § 609.713 (Supp. 2015).

**D E C I S I O N**

Appellant challenges her terroristic-threats conviction, arguing that the evidence is insufficient to prove that she acted with reckless disregard of the risk of terrorizing others. Appellant argues that her conduct and statements amounted to mere "transitory anger." Appellant does not argue on appeal that the *Al-Naseer* circumstantial-evidence evaluation applies to the sufficiency-of-the-evidence analysis on the mental-state question. *State v. Al-Naseer*, 788 N.W.2d 469 (Minn. 2010).

In considering a claim of insufficient evidence, we review whether "the facts in the record and any legitimate inferences drawn from them" could lead a fact-finder to "reasonably conclude that the defendant was guilty of the charged offense beyond a reasonable doubt." *State v. Whitley*, 682 N.W.2d 691, 694 (Minn. App. 2004). This standard of review applies equally in reviewing jury trials and court trials. *Id.* at 694-95.

Minnesota law provides that a person is guilty of making terroristic threats if she "threatens, directly or indirectly, to commit any crime of violence with purpose to terrorize another . . . or in a reckless disregard of the risk of causing such terror . . . ." Minn. Stat. § 609.713, subd. 1. "Terrorize means to cause extreme fear by use of violence or threats." *State v. Schweppe*, 306 Minn. 395, 400, 237 N.W.2d 609, 614 (1975). The state made no claim at trial that appellant acted "with purpose to terrorize." Instead, it posited only that appellant recklessly disregarded the risk of causing terror when she left the voicemail message. A statement is threatening if the "communication in its context would have a reasonable tendency to create apprehension that its originator will act according to its tenor." *Id.* at 399, 237 N.W.2d at 613 (quotations omitted). A

4

"crime of violence" includes third-degree assault. *See* Minn. Stat. § 609.1095, subd. 1(d) (2012) (listing third-degree assault in violation of Minn. Stat. § 609.223 (2012) as a crime of violence).

Appellant does not dispute that she made the statements on the voicemail message. She argues only that the state failed to prove the mental-state requirement. In the context of a terroristic-threats conviction, "[r]ecklessness requires deliberate action in disregard of a known, substantial risk." *State v. Bjergum*, 771 N.W.2d 53, 57 (Minn. App. 2009), *review denied* (Minn. Nov. 17, 2009). "[A] person who might lack a specific intent to threaten or terrorize may nevertheless utter an objectively threatening statement recklessly, committing a terroristic-threats crime. By acting without regard to a known, substantial risk, a person's threats, however intended, may violate the statute." *Id.*

Here, the state introduced the recording of appellant's threats. The recording on K.S.'s answering device contained several clear threats to "kill" people. K.S. testified that she had sent appellant several letters, which included the address of the Social Security office and K.S.'s direct telephone number, concerning appellant's pending claim. K.S. testified that she believed she and her office were threatened by appellant, that the message was "very concerning," and that she felt "stressed" and "nervous." Although appellant first disclaimed any memory of the day of the call, she later testified that she remembered some parts of the day. The voicemail message includes appellant's name, social security number, and telephone number. Appellant, in making the call, had to have retrieved the telephone number for the Social Security office from one of the notices sent to her, because she called the direct telephone of the very person who had

5

sent her the notices. On these facts, the fact-finder could reasonably find that appellant recklessly disregarded the risk of terror her statements could cause K.S.

Appellant argues that it is reasonable and rational to infer from the evidence that she was merely expressing transitory anger due to ongoing stress and mental-health issues, and that she did not intend to follow through on her threats. But the crime of reckless-disregard terroristic threats does not require proof of any intent to follow through on threats. It is enough that the threats were made, that they caused or tended to cause terror, and that the person making the threats recklessly disregarded the risk of terrorizing others. *Id.*, 771 N.W.2d at 57. The district court found that the state had proved the elements of the offense. The record supports the district court's findings.

Appellant also appears to argue that, in order to be a crime, terroristic threats must be specifically directed at a particular individual, rather than a group of people. She cites nothing in support of this claim. We can find no authority for such a "group-threat exception." Moreover, it is clear from the record that appellant called the direct line of K.S., the person responsible for processing appellant's claim, and made the threats to her. Although others employed by Social Security were threatened, the appellant's statements were directed at K.S. on her direct telephone line, and included "I might try to kill you guys, . . . killing all you f---ing white people."

Viewing the evidence in the light most favorable to the verdict, the evidence is sufficient to support the district court's finding that the state proved that appellant recklessly disregarded the risk of causing extreme fear to those hearing the telephone-

6

message threats.  The record supports the district court's conclusion that appellant is guilty of terroristic threats.[2]

**Affirmed.**

---

[2] Despite the very disturbing threats made by appellant, the district court commendably tailored a sentence which took appellant's apparent mental-health issues into account.