## STATE v. THOMAS LEE SCHWEPPE.

237 N. W. 2d 609.

December 26, 1975—No. 45080.

*C. Paul Jones,* State Public Defender, and *Mollie Raskind,* Assistant State Public Defender, for appellant.

*Warren Spannaus,* Attorney General, *Peter W. Sipkins,* Solicitor General, *Richard B. Allyn,* Assistant Attorney General, *Kent G. Harbison,* Special Assistant Attorney General, and *Elton A. Kuderer,* County Attorney, for respondent.

Heard before Rogosheske, Yetka, and Scott, JJ., and considered and decided by the court en banc.

ROGOSHESKE, JUSTICE.

Defendant was found guilty by a jury of the crime of terroristic threats, Minn. St. 609.713, subd. 1. In this appeal from the judgment of conviction and from an order denying his alternative motion for a judgment of acquittal or for a new trial, defendant principally asserts that (1) the evidence was insufficient as a matter of law to support the jury's finding of guilt; (2) prejudicial error occurred when the prosecution introduced evidence of defendant's homosexuality; (3) the prosecution failed before trial to give proper notice of his intention to use this evidence; and (4) defendant was denied his constitutional right to the effective assistance of counsel. We find that the evidence was sufficient to sustain the jury's verdict, there was no prejudi-

cial error, and defendant was afforded a fair trial. Accordingly, we affirm.

Defendant, age 31, was charged and convicted of making terroristic threats directed at Douglas Grotte, age 16, and his mother on the evening of May 7, 1973. That evening defendant spent some time at the Family Cue, a recreation center in Fairmont largely frequented by teenagers. While at the Family Cue, he talked to several persons, asking them questions about Douglas Grotte. He had an extended conversation with one Jon Larkin, age 15, who was an acquaintance of Douglas Grotte.

Jon Larkin testified at trial that defendant asked him questions about Grotte's whereabouts, his work schedule, and daily habits. He asked Larkin to go up to Grotte and say his (defendant's) name and then report back to defendant how Grotte reacted. He said that Grotte should be "real scared." Defendant wrote his first name and his telephone number on a slip of paper and gave it to Larkin so the latter could call him with the information he had requested.

Three other teenagers, schoolmates of Grotte, testified that they had overheard defendant make certain statements in the Family Cue that night. Mike Meyer, age 15, testified that he heard defendant say the word "kill" but did not hear anything else defendant said. He attempted to phone Douglas Grotte that evening.

Peter Sukalski, age 15, heard defendant say that "he wanted to kill Doug and his mom." He also heard him calling Jon Larkin names.

Tom Fisch, age 15, testified that he "heard something about killing Doug Grotte. [He didn't] know what the exact words were, but [he] heard the word 'kill' and 'Doug' right next to each other." He said he heard nothing else in the conversation.

At some point in the evening, Douglas Grotte entered the Family Cue. Jon Larkin stated that he was talking to defendant when Grotte entered, and that defendant left Larkin at that time

and approached Grotte. Defendant persisted in asking Grotte if he could have a minute of his time, and Grotte kept refusing to talk to him. After approximately 10 minutes, Grotte's ride came and he left the recreation center.

The next day, Jon Larkin approached Grotte during the lunch hour at school and told him, "Tom Schweppe was looking for [you] at the Cue the other night." Grotte testified that one Randy Laffey told him after school that defendant had made threats against him. Grotte stated he was "scared" about the threats. After he got home from work (Grotte had a part-time, after-school job), Grotte told his mother about the threats. After supper that day, May 8, Douglas Grotte went to the police station to complain. Defendant was subsequently arrested on the charge of making terroristic threats.

The statute under which defendant was convicted, § 609.713, subd. 1, provides:

"Whoever *threatens to commit any crime of violence with purpose to terrorize another* or to cause evacuation of a building, place of assembly or facility of public transportation or otherwise to cause serious public inconvenience, *or in a reckless disregard of the risk of causing such terror* or inconvenience may be sentenced to imprisonment for not more than five years." (Italics supplied.)

The above statute was enacted by the Minnesota Legislature in 1971 and is patterned after 10 U. L. A., Model Penal Code, § 211.3.[1] No reported cases in Minnesota have cited this statute

---

[1] Section 211.3 of the Model Penal Code (Proposed Draft 1962) states: "A person is guilty of a felony of the third degree if he threatens to commit any crime of violence with purpose to terrorize another or to cause evacuation of a building, place of assembly, or facility of public transportation, or otherwise to cause serious public inconvenience, or in reckless disregard of the risk of causing such terror or inconvenience." See, also, A. L. I. Model Penal Code (Tent. Draft No. 1960) § 211.3, pp. 8, 9.

or construed its meaning. A number of other jurisdictions have statutes similar to § 609.713.[2]

The state asserts, and the trial court instructed the jury, that the critical elements of the offense charged are (1) the accused made threats (2) to commit a crime of violence (3) with purpose to terrorize another or in reckless disregard of the risk of terrorizing another. Defendant asserts that the statute also requires that the threat be communicated to the victim by the accused or be made under circumstances that support an inference that the actor intended the threat to be communicated to the victim. Because the interpretation of this new statute is one of first impression in Minnesota, we deem it appropriate to review separately what we regard as the essential elements of this offense as presented by this case.

A threat is a declaration of an intention to injure another or his property by some unlawful act. See, Armstrong v. Ellington, 312 F. Supp. 1119, 1125 (W. D. Tenn. 1970); State v. Gunzelman, 210 Kan. 481, 502 P. 2d 705 (1972). The test of whether words or phrases are harmless or threatening is the context in which they are used. United States v. Prochaska, 222 F. 2d 1 (7 Cir. 1955); United States v. Pennell, 144 F. Supp. 317 (N. D. Cal. 1956). Thus the question of whether a given statement is a threat turns on whether the "communication 'in its context' would 'have a reasonable tendency to create apprehension that its originator will act according to its tenor.' " United States v. Bozeman, 495 F. 2d 508, 510 (5 Cir. 1974). Defendant's alleged statements in this case clearly constituted a threat to inflict personal injury. If the jury believed the unrefuted testimony of the prosecution witnesses, as we must assume from the verdict, then

---

[2] See, e. g., N. Y. Penal Law § 135.65 (McKinney 1965); Kan. Stat. Ann. § 21-3419 (1974); Maine Rev. Stat. Ann., Title 17, § 3701 (Pocket Part, 1975). It is a Federal offense to use interstate commerce to communicate a threat to injure, 18 USCA, § 875(c); to use the mails to make a threat to injure, 18 USCA, § 876; or to threaten the president or other specified officials, 18 USCA, § 871.

there was ample evidence to support the conclusion that defendant on May 7, 1973, threatened to kill Douglas Grotte and his mother, Corine Grotte. Obviously, such threats involved a "crime of violence" prohibited by our homicide statutes, §§ 609.18 to 609.21.

Section 609.713, subd. 1, requires that defendant utter the threat with the purpose of terrorizing another. Purpose in this context means aim, objective, or intention. Cf. State v. Baldino, 11 N. J. Super. 158, 78 A. 2d 95 (1951). Terrorize means to cause extreme fear by use of violence or threats. See, Armstrong v. Ellington, *supra*; State v. Gunzelman, *supra*.

The evidence supports the jury's conclusion that defendant uttered threats with the purpose to terrorize Douglas and Corine Grotte. Jon Larkin testified that on the night in question defendant said he wanted to make Douglas Grotte "paranoid." Defendant told Larkin to mention defendant's name to Grotte and to report to defendant whether Grotte reacted in a fearful manner.

Defendant asserts that evidence of purpose requires either a direct threat to the victim or a threat made in such a way as to support the inference that the speaker intended it to be conveyed to the victim. Defendant is logically correct in that a speaker cannot intentionally commit the crime of terrorizing another if he utters the threat in circumstances where he does not know, or have reason to know, that it will be communicated to the victim. This argument is of no help to defendant in this case, however, because the undenied testimony of the prosecution witnesses established that defendant uttered his threats in the presence of, and by conversing with, friends and acquaintances of Grotte. Such evidence implies, and clearly would support, a finding that defendant knew, or had reason to know, and thus intended that his threats to kill Douglas Grotte would be communicated to him. Section 609.713, subd. 1, which was read to the jury, prohibits threats made "in a reckless disregard of the risk of causing such terror." The jury also may well have concluded that defendant

at the very least recklessly risked the danger that his threats would be communicated and thereby would terrorize Grotte. Other courts have concluded that a defendant need not directly communicate the threat to the intended victim to be guilty of making a criminal threat. See, Gurley v. United States, 308 A. 2d 785 (D. C. App. 1973); State v. Lizotte, 256 A. 2d 439, 442 (Maine 1969).

The effect of a terroristic threat on the victim is not an essential element of the statutory offense proscribed by § 609.713, subd. 1. See, State v. Lizotte, *supra*. The trial court here permitted questions and testimony as to the effect of the alleged threat but instructed the jury to consider such testimony only to the extent that it had a bearing on the intent of defendant in making the threats. Defendant argues that the above testimony and instruction were prejudicial and tended to confuse the jury as to the essential elements of the offense. We disagree. Here, the victim's reaction to the threat was circumstantial evidence relevant to the element of intent of the defendant in making the threat. Intent, of course, is a subjective state of mind usually established only by reasonable inference from surrounding circumstances. Cf. State v. Parker, 282 Minn. 343, 164 N. W. 2d 633 (1969).

In summary, the evidence was sufficient to support a jury verdict of guilty.[3] The testimony offered at trial, considered as a whole, is consistent with a finding of guilt.

Defendant on this appeal argues that testimony concerning his homosexual relationship with Douglas Grotte constituted evi-

[3] Defendant has not raised, and the parties have not briefed, the issue of whether a defendant charged under Minn. St. 609.713, subd. 1, must have the actual intention of carrying out the threat at the time that the threat is made. We therefore do not consider or decide this question. Cf. Watts v. United States, 394 U. S. 705, 707, 89 S. Ct. 1399, 1401, 22 L. ed. 2d 664, 667 (1969); United States v. Patillo, 431 F. 2d 293 (4 Cir. 1970); United States v. Holder, 302 F. Supp. 296, 300 (D. Mont. 1969); Bass v. United States, 239 F. 2d 711, 716 (6 Cir. 1957); United States v. Compton, 428 F. 2d 18 (2 Cir. 1970).

dence of prior criminal conduct and evidence of his bad character which was erroneously admitted in that defendant at no time offered evidence of his good character or took the stand in his own defense. Defendant further asserts that references by the prosecutor to his homosexuality in the prosecutor's opening statement and in closing argument were improper and highly prejudicial.

The fact that a person is a homosexual does not constitute a crime under Minnesota statutes. Sodomy and indecent liberties with a child, however, are criminal offenses in Minnesota. See, §§ 609.293, subd. 4, and 609.296, subd. 2. At trial, there was no direct testimony as to any specific sexual acts or conduct between defendant and Douglas Grotte. While Grotte testified that he had a "sexual relationship" with defendant for 2 months in 1972 and had seen him almost every night during that period, Grotte was not asked what he meant by those words or to describe any sexual activities which may have occurred. The record reveals that both the prosecutor and defense counsel deliberately avoided such questions. The homosexual relationship was terminated by Grotte suddenly and unilaterally in April 1972.

Even if we were to assume that the above testimony indirectly constituted evidence of prior criminal conduct, the admission of evidence of a prior criminal offense is proper where it has a bearing upon the relationship between the accused and the victim and establishes a motive for the commission of the offense charged. See, State v. Gavle, 234 Minn. 186, 207, 48 N. W. 2d 44, 56 (1951); State v. Martin, 293 Minn. 116, 128, 197 N. W. 2d 219, 226 (1972). Since such evidence was clearly evidence relevant to establish defendant's motive for making the alleged threats, its admission was proper.

Defendant also claims that evidence of his homosexuality and homosexual relations with Douglas Grotte constituted direct evidence of his bad character. We have consistently held that as a general rule the character of a defendant in a criminal trial cannot be impeached unless he offers evidence of his good character.

See, State v. Gress, 250 Minn. 337, 84 N. W. 2d 616 (1957) ; State v. McCorvey, 262 Minn. 361, 114 N. W. 2d 703 (1962) ; State v. Sharich, 297 Minn. 19, 209 N. W. 2d 907 (1973).

While evidence of defendant's homosexual past may have tended to impeach his character, the record clearly shows that this was not the purpose for which it was offered or received at trial. As we read the record, the evidence was offered and admitted only after the trial court was persuaded that despite its prejudicial potential it was inextricably connected to the state's proof of the element of defendant's purpose and intent. Since past sexual misconduct by defendant constituting a separate criminal offense is admissible if it is directly relevant to the issue of motive or intent, State v. Gavle, *supra,* evidence of past sexual conduct which reflects adversely on defendant's general character is also admissible so long as such evidence is directly relevant to the issue of motive or intent. See, United States v. Hall, 342 F. 2d 849, 855 (4 Cir. 1965). At trial, moreover, defendant not only failed to object to the admission of such evidence but affirmatively sought to use such evidence to establish his innocence of any harmful intentions toward Grotte. In such circumstances, we find no merit in defendant's appellate claim of prejudicial error.

References by the prosecutor to defendant's homosexuality in his opening statement and closing argument, while arguably excessive and tasteless, were not prejudicial to the substantial rights of defendant. The prosecutor's insinuation that defendant made threats to Douglas Grotte due to unrequited affection and sexual rejection was supported by testimony at trial. The prosecutor's remarks did not constitute a "deliberate or intentional resort to pure bias as an instrument of persuasion." See, Briggs v. Chicago G. W. Ry. Co. 248 Minn. 418, 432, 80 N. W. 2d 625, 636 (1957).

Defendant next argues that reversible error occurred when evidence of defendant's homosexuality and his homosexual relationship with Douglas Grotte was admitted without proper notice

under State v. Spreigl, 272 Minn. 488, 139 N. W. 2d 167 (1965), and without a cautionary instruction under State v. Billstrom, 276 Minn. 174, 149 N. W. 2d 281 (1967). Whether homosexuality or homosexual relations are forms of social misconduct which require a Spreigl notice we need not decide because we are persuaded that the absence of such a notice did not prejudice defendant in this case. The purpose underlying the Spreigl notice procedure is to ensure that a defendant is not forced to defend himself against unexpected testimony of prior offenses. Here, defense counsel by his questions to the jury on voir dire made clear prior to trial that he fully anticipated that evidence of defendant's homosexuality would be introduced. Defendant, therefore, cannot now claim he was prejudiced by surprise testimony. Since such testimony was properly admissible as to motive, no prejudice flowed from a failure to follow the Spreigl requirement. At trial, defendant did not request a Billstrom cautionary instruction and neither then nor in his post-trial motion was there an objection to the absence of a Spreigl notice. The absence of any rulings by the trial court on these questions necessarily precludes review on appeal to this court.

Defendant also contends that his trial counsel was so ineffective as to deny him a fair trial. Trial counsel was privately retained by defendant. In State v. Lindstrom, 180 Minn. 435, 438, 231 N. W. 12, 13 (1930), we stated:

"* * * Where the defense is conducted by counsel selected by defendant or by those to whom he intrusted that duty, it is only under very exceptional circumstances that a new trial will be granted on account of the manner in which the defense was conducted * * *."

The principal claim of inadequate representation is that defense counsel pursued an unsound and ill-advised trial strategy and thereby allowed evidence of defendant's homosexuality and his homosexual relations with Douglas Grotte to reach the jury. As we have concluded that such evidence was admissible, defense

counsel's failure to object to its admission lends no support to this part of his claim. In attempting to portray defendant as a kind, well-meaning, affectionate friend of Grotte in order to persuade the jury that defendant was incapable of making the type of terroristic threats claimed, defense counsel chose a plausible, albeit not successful, trial strategy. This court has held that defense counsel's representation will not be considered ineffective if, as here, it rests on a reasonable tactical or strategic basis.

We have carefully read the transcript of the trial in this case with a view to other errors alleged by defendant, including his all-encompassing assertion that he was not afforded a fair trial. We conclude that defendant was given a fair trial and that these alleged errors do not warrant a reversal of his conviction. Considering the record in its entirety, we believe that the crucial issue of fact confronting the jury was whether defendant's threats were made with the purpose and intent of restoring his prior relationship with Grotte or, believing that to be hopeless, with the purpose and intent of seeking revenge against Grotte by terrorizing him. The record reveals that the trial judge remained sensitive and mindful of the potential prejudice to defendant inherent in his relationship with Grotte and protected defendant's right to a fair trial by excluding all evidence not necessary to the jury resolution of that crucial issue of fact. We are persuaded that the trial court, confronted with the interpretation of a new and broadly written statute,[4] acted fairly and responsibly in the difficult circumstances of this case.

We have carefully considered all other alleged errors raised by defendant and find each to be without merit.

Affirmed.

---

[4] We caution concerning the potential sweep of Minn. St. 609.713, subd. 1, which, because of its broad language, carries with it the danger of prosecutorial abuse in that innocent or idle threats could be too easily construed to constitute a terroristic threat.