*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0037**

State of Minnesota,
Respondent,

vs.

Kevin Lee Savoie, Sr.,
Appellant.

**Filed November 24, 2014
Affirmed
Bjorkman, Judge**

Rice County District Court
File No. 66-CR-12-2407

Lori Swanson, Attorney General, Michael Everson, Assistant Attorney General, St. Paul, Minnesota; and

Paul Beaumaster, Rice County Attorney, Faribault, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Rochelle R. Winn, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Halbrooks, Presiding Judge; Connolly, Judge; and Bjorkman, Judge.

**U N P U B L I S H E D   O P I N I O N**

**BJORKMAN**, Judge

Appellant challenges his conviction of making terroristic threats, arguing that the prosecutor committed misconduct by eliciting inadmissible testimony. In a pro se

supplemental brief, appellant also challenges the sufficiency of the evidence supporting his conviction. We affirm.

## FACTS

Appellant Kevin Savoie and M.P. dated for 27 years and have two adult children. On August 26, 2012, Savoie, M.P., and M.P.'s current boyfriend, R.O., were doing yard work at the home of Savoie and M.P.'s son. M.P. was raking and Savoie was using a tree saw to help R.O. remove a tree from the fence. As they worked, M.P. asked Savoie about a missing camera, and Savoie became angry. He yelled, "I'm not a thief," and started walking toward her with the tree saw in his hand. R.O. told Savoie to "back off," and Savoie said, "Shut the f—k up, O[.], or I'll stick this in your throat," indicating the tree saw. Savoie continued to approach M.P., and she said, "Kevin, back off, back off." Savoie slapped her on the left side of the face. M.P. went back to raking, and Savoie followed her and continued yelling. As she approached the end of the driveway, M.P. stopped raking, and as she stood there, Savoie waved the saw toward her, telling her to "shut [her] mouth or he was gonna bust [her] in [her] mouth," then, "I'll kill you, bi—h, and I'll bury you."

The neighbors across the street, D.R.P. and M.L.P., observed the altercation and called 911. D.R.P. continued to observe and describe events to the operator, including that Savoie was waving the saw around and that Savoie was "getting into her face pretty hardcore." The police arrived shortly after Savoie told M.P. he would kill and bury her. When Officer Bryan Johnson arrived at the scene, Savoie approached him, carrying the saw and yelling. Officer Johnson ordered Savoie to drop the saw, and he complied.

2

Additional officers arrived shortly thereafter, took a statement from M.P., and arrested Savoie.

Savoie was charged with second-degree assault and making terroristic threats. At his jury trial, Savoie testified that he argued with and insulted M.P. and that she threatened him with the rake, but that he did not threaten her. At Savoie's request, the district court instructed the jury on self-defense. The jury found Savoie guilty of making terroristic threats but acquitted him of the assault charge. The district court sentenced Savoie to 30 months' imprisonment. Savoie appeals.

**D E C I S I O N**

**I. The prosecutor did not commit misconduct by eliciting inadmissible testimony.**

When, as here, an appellant claims prosecutorial misconduct based on unobjected-to conduct, we review under a modified plain-error standard. *See State v. Ramey*, 721 N.W.2d 294, 299-300, 302 (Minn. 2006); *see also* Minn. R. Crim. P. 31.02. Under this standard, an appellant must demonstrate that the prosecutor's conduct was erroneous and the error was plain. *Ramey*, 721 N.W.2d at 302. The burden then shifts to the state to prove that the error did not affect the appellant's substantial rights. *Id.*

Savoie argues that the prosecutor committed misconduct by eliciting testimony from Officer Johnson and M.P. that suggests Savoie has a criminal record. It is misconduct for a prosecutor to ask questions calculated to elicit "clearly inadmissible evidence." *State v. Fields*, 730 N.W.2d 777, 782 (Minn. 2007). The prosecutor also has a duty to prepare the state's witnesses "to avoid inadmissible or prejudicial statements."

3

*State v. McNeil*, 658 N.W.2d 228, 232 (Minn. App. 2003). Testimony suggesting that a defendant has a criminal record or frequent contacts with police generally is inadmissible. *See State v. Strommen*, 648 N.W.2d 681, 687-88 (Minn. 2002); *State v. Richmond*, 298 Minn. 561, 562-63, 214 N.W.2d 694, 695 (1974). But references to prior crimes or police contacts are proper if they elucidate the history of the relationship between the defendant and alleged victim or bear on an element of the offense. *See* Minn. Stat. § 634.20 (2012) (permitting evidence of defendant's prior domestic abuse or other "domestic conduct"); *State v. Halverson*, 381 N.W.2d 40, 43 (Minn. App. 1986) (noting that references to defendant's incarceration were relevant to caller's identity in terroristic-threats case because calls stopped during his incarceration), *review denied* (Minn. Mar. 21, 1986); *cf. State v. Valentine*, 787 N.W.2d 630, 641 (Minn. App. 2010) (explaining that testimony that officer knows defendant from prior contacts "is error if the defendant's identity is not an issue in the case"), *review denied* (Minn. Nov. 16, 2010). Even improper references to a defendant's criminal history or police contacts require reversal only when it is likely that the testimony substantially affected the jury's decision. *McNeil*, 658 N.W.2d at 232; *see also Valentine*, 787 N.W.2d at 641 (holding that improper prior-police-contacts testimony was not prejudicial because it was "incidental" and the evidence of guilt was overwhelming).

**Officer Johnson's testimony**

Savoie first argues that the prosecutor improperly elicited testimony from Officer Johnson that he knew Savoie in his capacity as a police officer. We consider the challenged testimony in context.

When asked about his arrival at the scene, Officer Johnson stated that he pulled up to the house and "they were standing in the yard." The prosecutor asked the officer to explain:

> PROSECUTOR: And when you say they, who was they? Who was there?
>
> OFFICER: I saw two people standing there who I recognized as Kevin Savoie and [M.P.].
>
> PROSECUTOR: And do you see the person you're referring to as Kevin Savoie in the courtroom today?
>
> OFFICER: Yes, I do.
>
> PROSECUTOR: Can you point him out, please, and tell us what he's wearing?
>
> [Officer Johnson identifies Savoie.]
>
> PROSECUTOR: And you knew both Mr. Savoie and [M.P.] on sight?
>
> OFFICER: Yes. I've had contact with them in my capacity as a police officer in the past.

We discern no impropriety in this line of questioning. The prosecutor initially sought to clarify vague testimony and then established that Officer Johnson could reliably identify Savoie—both proper purposes. Officer Johnson's statement that he knew Savoie in his capacity as a police officer was part of his identification and focused as much on M.P. as on Savoie.

Moreover, it is highly unlikely that the challenged testimony influenced the jury to find Savoie guilty of making terroristic threats. The testimony was brief, while the evidence against Savoie was strong. M.P.'s testimony was substantially consistent with

5

her initial statement to police, the 911 call, and both neighbors' testimony. The jury did not simply find Savoie guilty based on an inferred propensity toward criminal behavior, as evidenced by its not-guilty verdict on the assault charge.

On this record, we conclude that Savoie's plain-error challenge to the prosecutor's examination of Officer Johnson fails.

**M.P.'s testimony**

Savoie also argues that the prosecutor improperly elicited testimony from M.P. that Savoie has a history of violent conduct toward her because he did not "place his character at issue." We again consider the challenged testimony in context.

M.P. testified that Savoie threatened to kill and bury her, and the prosecutor asked whether there was anything about "the way [he] said these things" or about their relationship that would have led her to believe "that he was joking or not serious." M.P. responded, "No, because we had a 27-year, volatile relationship . . . . He made threats, he usually went through with them." The prosecutor also asked M.P. how Savoie's statements made her feel. She responded that she was scared of Savoie and afraid that he would "beat the hell out of me or he'd stab me with the saw that he had. Kevin's a very violent person."

This evidence had multiple proper purposes. First, the evidence is relevant to whether Savoie intended to cause M.P. fear, an element of both charged offenses. *See* Minn. Stat. §§ 609.02, subd. 10 (defining assault), .713, subd. 1 (defining terroristic-threats) (2012); *State v. Schweppe*, 306 Minn. 395, 401, 237 N.W.2d 609, 614 (1975) (stating that the effect of a terroristic threat on the victim is not an essential element of

6

the crime but is circumstantial evidence relevant to the element of the defendant's intent). Second, M.P.'s testimony about Savoie's past violence toward her is admissible relationship evidence under Minn. Stat. § 634.20. Such evidence is generally admissible to illuminate the relationship between the accused and the alleged victim and provide a context with which the jury can "better judge the credibility of the principals in the relationship." *See State v. McCoy*, 682 N.W.2d 153, 161 (Minn. 2004); *see also State v. Harmann*, 805 N.W.2d 883, 890 (Minn. App. 2011) (stating that relationship evidence includes evidence of a "strained relationship" that puts the incident between the accused and the victim in context), *review denied* (Minn. Jan. 17, 2012). Savoie argued to the jury that M.P. was not credible because she overstated his conduct toward her and minimized her conduct toward him. M.P.'s testimony about Savoie's past threats and violent conduct toward her provided a context for the jury to evaluate that defense.

But even if M.P.'s testimony exceeded the permissible limits of such evidence, it did not impair Savoie's substantial rights. As we discussed above, the evidence against Savoie was strong and the jury's verdicts reflect reasoned examination of the evidence; it is unlikely that M.P.'s testimony unfairly influenced the jury's verdict. Because the record indicates neither error nor prejudice, we conclude Savoie's plain-error challenge to the prosecutor's examination of M.P. fails.

## II. Sufficient evidence supports Savoie's conviction.

When reviewing the sufficiency of the evidence supporting a jury verdict, we are "limited to ascertaining whether, given the facts in the record and the legitimate inferences that can be drawn from those facts, a jury could reasonably conclude that the

7

defendant was guilty of the offense charged." *Bernhardt v. State*, 684 N.W.2d 465, 476 (Minn. 2004) (quotation omitted). We "will not disturb the verdict if the jury, acting with due regard for the presumption of innocence and for the necessity of overcoming it by proof beyond a reasonable doubt, could reasonably conclude that [the] defendant was proven guilty of the offense charged." *Id.* at 476–77.

Savoie argues that insufficient evidence supports his conviction because the testimony of M.P., D.R.P., and M.L.P. was inconsistent with other evidence and therefore not credible. We disagree. The jury heard all three witnesses' testimony, including the inconsistencies Savoie claims, and accepted their version of events. We will not second-guess the jury's credibility determinations. Because Savoie does not dispute that their testimony, if believed, amply establishes the elements of making terroristic threats, his sufficiency-of-the-evidence challenge fails.

**Affirmed.**