*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1007**

State of Minnesota,
Respondent,

vs.

Yuri Alexander Taylor,
Appellant.

**Filed April 13, 2015
Affirmed
Halbrooks, Judge**

Isanti County District Court
File No. 30-CR-13-652

Lori Swanson, Attorney General, Angela Behrens, Assistant Attorney General, St. Paul, Minnesota; and

Jeffrey Edblad, Isanti County Attorney, Cambridge, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Benjamin J. Butler, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Johnson, Presiding Judge; Halbrooks, Judge; and Larkin, Judge.

**U N P U B L I S H E D   O P I N I O N**

**HALBROOKS**, Judge

Following his conviction of felony domestic assault–fear, appellant argues that (1) the evidence was insufficient to prove that he acted with intent to cause the

complainant to suffer fear of immediate bodily harm or death and (2) the district court plainly erred by admitting two recordings that contain hearsay evidence of appellant's alleged prior bad acts. We affirm.

## FACTS

After two days away, appellant Yuri Alexander Taylor returned to the home he shared with his fiancée, T.W., and their two-year-old daughter. Taylor immediately reviewed the call log in T.W.'s phone, became angry, accused T.W. of infidelity, and threw the phone, causing it to break apart. He then picked up a laptop computer and broke it over his knee, saying something along the lines of, "you're next, b-tch" or "shut the f-ck up before I beat your a-s." Taylor lunged at or moved toward T.W., who reassembled the phone and called 911. Responding deputies spoke with Taylor and T.W., capturing the conversations on a squad-car recording. T.W. also gave a recorded statement about ten minutes after the incident.

The state charged Taylor with (1) felony domestic assault–fear in violation of Minn. Stat. § 609.2242, subds. 1(1), 4 (2012), specifying two previous qualified domestic-violence-related offense convictions and (2) terroristic threats in violation of Minn. Stat. § 609.713, subd. 1 (2012). At Taylor's subsequent jury trial, T.W. and the first responding deputy testified. The prosecutor introduced, without objection, the squad-car recording and T.W.'s recorded statement. Although defense counsel did not object to the admission of these recordings, he did move to exclude a later squad-car recording from Taylor's arrest. The district court granted the motion in limine, ruling that the second squad-car recording contained *Spreigl* evidence of prior bad acts and was

2

highly prejudicial. The prosecutor also introduced, without objection, photographs of the broken laptop.

At the close of the state's case, the district court granted Taylor's motion for judgment of acquittal on the terroristic-threats charge but denied his motion with respect to domestic assault–fear. The jury found Taylor guilty of domestic assault–fear. Taylor now appeals his conviction.

**D E C I S I O N**

**I.**

Taylor challenges the sufficiency of the evidence of intent. A person is guilty of domestic assault if he "commits an act with intent to cause fear in another of immediate bodily harm or death" against a family or household member. Minn. Stat. § 609.2242, subd. 1(1). "'Bodily harm' means physical pain or injury, illness, or any impairment of physical condition." Minn. Stat. § 609.02, subd. 7 (2012). Assault–fear is a specific-intent crime that requires the state to prove that the defendant intended to cause a particular result, namely fear of immediate bodily harm or death. *See State v. Fleck*, 810 N.W.2d 303, 308-10 (Minn. 2012) (construing Minn. Stat. § 609.02, subd. 10 (2010)). Intent is "an inference drawn by the jury from the totality of circumstances." *State v. Fardan*, 773 N.W.2d 303, 321 (Minn. 2009) (quotation omitted).

Under the traditional standard of review of sufficiency of the evidence, appellate courts "review the evidence to determine whether, given the facts in the record and the legitimate inferences that can be drawn from those facts, a jury could reasonably conclude that the defendant was guilty of the offense charged." *State v. Fairbanks*, 842

3

N.W.2d 297, 306-07 (Minn. 2014) (quotation omitted). But "[i]f a conviction, or a single element of a criminal offense, is based solely on circumstantial evidence," *id.* at 307, appellate courts

> apply a two-step analysis in determining whether [that] circumstantial evidence is sufficient to support a guilty verdict. The first step is to identify the circumstances proved. The second step is to determine whether the circumstances proved are consistent with guilt and inconsistent with any rational hypothesis except that of guilt.
>
> In identifying the circumstances proved, [appellate courts] assume that the jury resolved any factual disputes in a manner that is consistent with the jury's verdict. Put differently, [appellate courts] construe conflicting evidence in the light most favorable to the verdict and assume that the jury believed the State's witnesses and disbelieved the defense witnesses. This is because the jury is in the best position to evaluate the credibility of the evidence, even in cases based on circumstantial evidence. Under the second step of [the] analysis, [appellate courts] examine independently the reasonableness of the inferences that might be drawn from the circumstances proved.

*State v. Moore*, 846 N.W.2d 83, 88 (Minn. 2014) (quotations and citations omitted).

Taylor concedes that the circumstances proved are consistent with an inference that he intended to cause T.W. to fear immediate bodily harm but argues that the circumstances proved are not inconsistent beyond a reasonable doubt with all other possibilities. Taylor argues that because he often takes a step toward T.W. when speaking to her, stepping toward her on this occasion is not inconsistent with any rational hypothesis other than that he intended her to fear immediate bodily harm. But T.W. testified that, even though Taylor often steps toward her while speaking, it frightened her on this occasion because he was very angry. A defendant's conduct may be viewed in

4

the context of his relationship with the victim, *State v. Franks*, 765 N.W.2d 68, 75 (Minn. 2009), and a victim's reaction to that conduct is circumstantial evidence that is relevant to intent, *see State v. Schweppe*, 306 Minn. 395, 401, 237 N.W.2d 609, 614 (1975) (concluding that a victim's reaction to a threat was circumstantial evidence relevant to the intent element of a terroristic-threats charge). Taylor also argues that when he smashed the laptop, he first moved away from T.W., thereby supporting a rational hypothesis that he did not intend to cause her fear. But T.W. did not testify that Taylor walked away from her before he broke the laptop. She testified, "He smashed the phone and then threw it on the ground, and then he turned around and grabbed my laptop and smashed that over his leg."

We reject Taylor's characterization of the circumstances proved, as well as the premise that each of Taylor's actions should be examined in isolation. Intent is gleaned from the totality of the circumstances. *Fardan*, 773 N.W.2d at 321. Viewing the totality of the circumstances proved at trial, we conclude that there is no rational hypothesis other than that Taylor acted with the intent to cause T.W. to fear immediate bodily harm. Accordingly, we conclude that the evidence was sufficient to convict Taylor of domestic assault–fear.

## II.

Taylor argues that the district court erred in admitting the squad-car recording and T.W.'s recorded statement. He argues that the recordings contained inadmissible hearsay and *Spreigl* evidence. But when the prosecutor offered these exhibits, the district court asked Taylor's counsel if he objected to their admission, and counsel responded, "No

objection" both times. "Under the invited error doctrine, a party cannot assert on appeal an error that he invited or that could have been prevented at the district court." *State v. Carridine*, 812 N.W.2d 130, 142 (Minn. 2012).

Earlier, the district court had taken a recess so that Taylor and his counsel could review and discuss the recordings before they were offered. The district court asked Taylor's counsel if he had anything else to put on the record after this recess, and counsel stated:

> Yes. We did view the video, some of it he declined to watch, it was just a car driving around, things like that, it was not pertinent we don't believe that the State's going to present that portion anyway, it's just not relevant. We also listened to audio of [T.W.], . . . and he acknowledged the statements that I've been talking about are reflected in the police reports that she made.
>
> I've also informed Mr. Taylor that trial theories, tactics, asking questions, who would ask questions of is my decision, and his decisions are his constitutional rights, of course . . . .

At the close of the state's case, the district court granted Taylor's motion for judgment of acquittal on the terroristic-threats charge, relying in part on the content of T.W.'s recorded statement. Later, in closing argument, Taylor's counsel specifically referenced the content of the recordings to challenge T.W.'s credibility and to argue that the state's evidence failed to support a guilty verdict on the domestic-assault charge.

From our vantage point, it appears that Taylor's counsel made a strategic decision not to object to the admission of the recordings when given every opportunity to do so by the district court. Counsel could have reasonably determined that the recordings would support Taylor's motion for judgment of acquittal on the terroristic-threats charge, if not

6

both charges, and he specifically referenced trial theories and tactics when asked if he wanted to make a record about the evidence.[1] Because Taylor did not object to the introduction of the two recordings, we are now asked to consider whether the district court plainly erred by not sua sponte excluding the evidence. In the context of this record, we decline to do so. *See State v. Washington*, 693 N.W.2d 195, 205 (Minn. 2005) ("We do not agree that the district court must, or even should, interfere with the trial strategy of the defendant.").

Our reluctance to second-guess the district court and trial counsel is particularly applicable to Taylor's hearsay challenge to the content of the recordings. Minnesota courts have noted the importance of objecting to potential hearsay evidence at trial due to the "complexity and subtlety of the operation of the hearsay rule and its exceptions," so that a "full discussion of admissibility [can] be conducted at trial." *State v. Manthey*, 711 N.W.2d 498, 504 (Minn. 2006). "Where an objection is not made, hearsay evidence will be admitted" if it "has probative force." *State v. Hamilton*, 268 N.W.2d 56, 63 (Minn. 1978). We nevertheless note that consideration of the factors identified and applied in *State v. Ortlepp*, 363 N.W.2d 39, 44 (Minn. 1985), and *State v. Plantin*, 682 N.W.2d 653, 659 (Minn. App. 2004), *review denied* (Minn. Sept. 29, 2004), would support a conclusion that T.W.'s recorded statements satisfied circumstantial guarantees of trustworthiness. And therefore the district court did not plainly err by admitting them. *See* Minn. R. Evid. 807 (requiring that out-of-court statements have circumstantial guarantees of trustworthiness to be admissible); *State v. Tscheu*, 758 N.W.2d 849, 863

---

[1] Taylor does not argue that he received ineffective assistance of trial counsel.

(Minn. 2008) (holding that plain-error analysis applies to unobjected-to admission of out-of-court statements).

We also note, with respect to Taylor's *Spreigl* argument, that T.W.'s statements that Taylor had taken her car, spent her money, threatened to break her neck, and had physically abused a former girlfriend would be admissible as relationship evidence under Minn. Stat. § 634.20 (Supp. 2013). The statements illuminate the history of T.W.'s relationship with Taylor and provide context for the current incident. *See State v. Valentine*, 787 N.W.2d 630, 638 (Minn. App. 2010) (holding that Minn. Stat. § 634.20 (2008) authorized the admission of evidence of domestic abuse against an ex-girlfriend), *review denied* (Minn. Nov. 16, 2010). When evidence is admissible under Minn. Stat. § 634.20, its admissibility as *Spreigl* evidence need not be addressed. *Id.*

## III.

In a pro se supplemental brief, Taylor recounts his version of the incident and generally claims unfair treatment by the criminal justice system. His supplemental arguments are unsupported by legal citation. We need "not consider pro se claims on appeal that are unsupported by either arguments or citations to legal authority." *State v. Bartylla*, 755 N.W.2d 8, 22 (Minn. 2008).

**Affirmed.**