*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-1411**

State of Minnesota,
Respondent,

vs.

Kyle Lloyd Ketterling,
Appellant.

**Filed August 26, 2024
Reversed and remanded
Jesson, Judge***

Olmsted County District Court
File No. 55-CR-22-3314

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Mark A. Ostrem, Olmsted County Attorney, James E. Haase, Senior Assistant County Attorney, Rochester, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, John Patrick Monnens, Assistant Public Defender, St. Paul, Minnesota (for appellant)

    Considered and decided by Reyes, Presiding Judge; Ross, Judge; and Jesson, Judge.

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**JESSON**, Judge

On the social media platform Gettr, appellant Kyle Ketterling posted caustic diatribes in which he threatened to kill various groups of people. The state charged Ketterling with four counts of threats of violence. A jury found him guilty on three of those counts.

Ketterling argues that his posts are protected First Amendment speech, and the threats-of-violence statute is unconstitutional as applied in this case. In the alternative, he challenges the sufficiency of the state's evidence. For procedural reasons, our review is limited to one particular post made by Ketterling in which he threatened to kill members of the "deep state." Because members of the "deep state" are not an identifiable group, we conclude that post constitutes political speech and was not a true threat. As a result, this particular post is protected by the First Amendment. Therefore, we reverse his conviction on count 2. But, because the jury found Ketterling guilty of two additional offenses which have not been adjudicated, we remand this case to the district court to address the unadjudicated counts. In light of this disposition, we do not reach Ketterling's argument that the state's evidence is insufficient.

## FACTS

Between April and May 2022, Ketterling was a prolific poster of crude and abusive language on the online "micro-blogging platform" known as Gettr. Over the course of six weeks, Ketterling, writing under the username "muslimehunter," generated more than 1,900 posts, reposts, and comments (collectively, posts) on the platform.

Most of the posts, the parties agree, are of a political nature. Ketterling often expressed support for politicians such as former President Donald Trump and Kentucky Senator Rand Paul. He also discussed his opposition to vaccines, his belief that results of the 2020 presidential election were illegitimate, and his support for those involved with the attack on the United States Capitol on January 6, 2021.

Ketterling's posts often allude to, or directly call for, violent action. He frequently posted, for example, that he believes in the necessity of a "civil war" and a "violent purge." Ketterling regularly discussed killing large swaths of people, including various federal, state, and local politicians; federal agents; Muslims; and undocumented immigrants. Concerned about the tenor of these posts, a content-moderator for the platform reported them to law enforcement.

Law enforcement had prior experience with Ketterling. In September 2021, the Rochester Police Department investigated after Ketterling sent an email to local school board officials that contained "vaguely threatening comments." Three months later, the police department received a report from the vice president and general manager of a local television station that Ketterling had sent a disturbing message through the news station's online story tip form. The message said: "You are paid liars. Nothing more. Nothing less. Soon, you will pay for your lies . . . with your lives . . . because Civil war is just around the corner . . . or AT LEAST a violent PURGE!"

Following the content-moderator's report, a police officer reviewed Ketterling's Gettr posts, which were publicly accessible on the platform. The officer was "very alarmed" by the content of the posts and concerned that Ketterling would carry out his

3

threats in the city of Rochester because of its large Muslim population and because federal agents work in the city. Police arrested Ketterling in mid-May 2022.

The state charged Ketterling with four counts of threats of violence. *See* Minn. Stat. § 609.713, subd. 1 (2020). The message sent to the news station formed the basis of count 1. Count 2 was initially premised on Ketterling's written response to a Gettr user who opposed his political views. The message read:

> You are DEAD! We are coming for you. My buddy just found
> out who you are. We are going to torch you AND your family.
> I am going to kill YOU myself. That is if I we get to you first.
> Someone else just told me he knows who you are a [sic] where
> you live, so . . . MARK MY WORDS . . . YOU ARE DEAD!

During trial, in March 2023, Ketterling moved for a judgment of acquittal on that count, arguing that the state had not met its burden to establish that anyone reasonably believed he would act on the threat charged because the state presented no evidence that the other Gettr user had even read the post. The district court agreed.[1] The parties subsequently stipulated that the following post would be submitted to the jury as the basis for an amended count 2:

> This is a WARNING AND A PROMISE-
> Either the election is decertified BY May 22nd, or we will start
> killing ANYONE AND EVERYONE we feel is involved with
> the DEEPSTATE . . .
> You now have 11 days!

The following two posts formed the basis for counts 3 and 4 of the complaint respectively.

---

[1] Neither party challenges the district court's initial dismissal of count 2 based on the original post charged. Consequently, we need not decide whether that dismissal was appropriate for purposes of this appeal.

This is going to happen here in my State of Minnisomaliota . . . BY FORCE IF NEED BE!!! Ellison and Omar are on our KILL LISTS as are EVERY MUSLIME in this State! This is a WARNING to EVERY MUSLIME-Assililate [sic], leave this country, or WE WILL HUNT YOU DOWN AND KILL YOU! Man, woman, or child! GET THE F--- OUT!!!

This is a warning to ALL MUSLIME in the USA or Canada— assimilate, get out, or WE WILL KILL YOU! MAN, WOMAN, OR CHILD . . ."

Following a three-day trial, the jury acquitted Ketterling of count 1 but found him guilty of counts 2, 3, and 4.

At sentencing, the district court entered a conviction on count 2, stayed imposition of Ketterling's sentence, and placed him on supervised probation for five years. The district court, at the state's request, did not enter convictions on count 3 or 4. Ketterling appeals.

**DECISION**

Ketterling argues that the threats-of-violence statute, Minnesota Statutes section 609.713, subdivision 1, is unconstitutional as applied to his Gettr posts because his posts are protected political speech as opposed to "true threats." He also argues, in the alternative, that the state presented insufficient evidence that he would follow through with his threatened conduct or that venue was appropriate in Olmsted County. In making both of these arguments Ketterling seeks reversal not only of his conviction on count 2, but also review of the jury's findings of guilt on counts 3 and 4.

Before proceeding to Ketterling's constitutional argument, we must address the scope of our review. Should we, as Ketterling requests, review all three of the jury's guilty

5

verdicts when the district court has convicted and sentenced him for only one? Our precedent guides us not to do so. A criminal defendant is not entitled to appellate review of a jury's guilty verdict unless a district court formally adjudicates the defendant's guilt by entering a conviction. *State v. Ickler*, 2 N.W.3d 577, 586-87 (Minn. App. 2024) (citing Minn. R. Crim. P. 28.02, subd. 2(1)). Here, the record is clear that the district court did not enter convictions for counts 3 and 4. Thus, our review is limited to addressing Ketterling's argument as it relates to the post charged in the amended count 2, which reads:

> This is a WARNING AND A PROMISE-
> Either the election is decertified BY May 22nd, or we will start killing ANYONE AND EVERYONE we feel is involved with the DEEPSTATE . . .
> You now have 11 days!

Having defined the scope of our review, we turn to the law governing Ketterling's constitutional argument. The threats-of-violence statute, of which Ketterling was convicted, makes it a crime to "threaten[], directly or indirectly, to commit any crime of violence with purpose to terrorize another . . . or in a reckless disregard of the risk of causing such terror." Minn. Stat. § 609.713, subd. 1. In *State v. Mrozinski*, the supreme court recently concluded—in the context of a facial challenge—that the threats-of-violence statute did not violate the First Amendment because it is not overbroad, meaning that it does not criminalize a substantial portion of protected speech. 971 N.W.2d 233, 237-47 (Minn. 2022). But the supreme court acknowledged that the statute makes criminal only "speech that is a true threat." *Id.* at 246. The supreme court left open the possibility of an as-applied challenge, which asserts that the statute is unconstitutional when applied to a particular defendant's speech. *Id.* at 246-47.

6

This is the argument that Ketterling now makes: that the threats of violence statute is unconstitutional as applied to the post charged in the amended count 2 because his post is protected political speech. We apply a de novo standard of review to Ketterling's constitutional argument. *See id.* at 238. In conducting our review, we first discuss the relevant caselaw governing First Amendment protection of political speech and the scope of the "true threat" exception to that protection. We then turn to applying those principles to Ketterling's post charged in the amended count 2.

The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech" and it is applicable to states through the Fourteenth Amendment. U.S. Const. amend. I; *Virginia v. Black*, 538 U.S. 343, 358 (2003). Broadly speaking, the First Amendment prevents the federal and state governments from restricting speech based on the speech's content, message, ideas, or subject matter. *United States v. Alvarez*, 567 U.S. 709, 716-17 (2012). Courts presume that content-based speech restrictions are invalid, and the burden falls to the government to demonstrate that a content-based speech restriction is constitutional. *Id.* This protection of speech facilitates the free exchange of ideas, "even ideas that the overwhelming majority of people might find distasteful or discomforting." *Black*, 538 U.S. at 358.

Laws proscribing political speech are subject to strict scrutiny because speech is an "essential mechanism of democracy" and the ability of people to discuss and debate issues is necessary to facilitate democratic self-government. *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 339 (2010). We, as a nation, are committed to "the principle that debate on public issues should be uninhibited, robust, and wide-open," and that those

debates and discussions "may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964).

The First Amendment, even when addressing political speech, does not protect true threats of violence. *Counterman v. Colorado*, 600 U.S. 66, 69 (2023). But what constitutes a true threat? In *Black*, the Supreme Court defined a true threat as "a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals" and concluded that a government could permissibly outlaw cross burnings done with intent to intimidate because of "cross burning's long and pernicious history as a signal of impending violence." 538 U.S. at 359, 363. In contrast, the Supreme Court in *Watts v. United States* explained that a protester's statement at a rally threatening to shoot the president if drafted was protected speech because it was political hyperbole, which may be "abusive[] and inexact," but did not demonstrate intent to carry out the threat. 394 U.S. 705, 705-08 (1969). Ultimately, it is the context of the speech that determines whether it is harmless or threatening as our state supreme court noted in *Mrozinski*, a case in which the defendant sent toe tags, like those used in a morgue, to child protection workers. 971 N.W.2d at 237-40. A statement is a threat, if in context, it creates reasonable apprehension that the person will act on the threat. *State v. Schweppe*, 237 N.W.2d 609, 613 (Minn. 1975.).

With this precedent in mind, we turn to the facts of this case. Here, the parties do not dispute that the Gettr post upon which the amended count 2 is based constitutes speech for First Amendment purposes. The state contends, however, that the post does not fall

8

within the ambit of First Amendment protection because it is a true threat of violence. *See Counterman*, 600 U.S. at 69. Given the political context of the speech and its lack of specificity, we disagree.

For Kettering's post charged in the amended count 2 to be a true threat it must "communicate a serious expression of an intent to commit an act of unlawful violence to a *particular* individual or group of individuals." *Black*, 538 U.S. at 359 (emphasis added). In the post at issue, Ketterling threatened to kill individuals "involved with the deep state" in the context of making a political statement about the 2020 presidential election. But whether a "deep state" even exists is—at most—a matter of political opinion. By its very definition, the "deep state" is "an *alleged* secret network . . . operating extralegally to influence and enact government policy." *Deep State*, Merriam-Webster.com, [https://perma.cc/T3AK-68MB] (emphasis added). And the true threats exception to free speech protection serves a narrow purpose: to protect *individuals*, and groups of individuals, from the fear—and possibility—of violence. *Black*, 538 U.S. at 359-360. It is unclear what individuals, or group of individuals, if any, would fear violence as a result of this particular politically laden threat.[2]

We contrast the general nature of the "deep state" threat in the amended count 2 with the original post charged in count 2, which was directed at a particular Gettr user. And, without weighing in on the protected-speech status of counts 3 and 4, we observe that they too are more specific and directed than the post charged in the amended count 2, as

---

[2] Because we conclude that Ketterling's post was not directed at an identifiable group, we do not address his contention that his threat was conditional.

Ketterling concedes in his briefing to this court. Like the defendant in *Watts*, who was charged with a crime for stating "If they ever make me carry a rifle the first man I want to get in my sights is L.B.J." at public rally, Ketterling's post charged in count 2 is crude political hyperbole stating opposition to the president. 394 U.S. at 705-08. While disturbing, it is speech protected by the First Amendment.

Notably, the state does not substantively respond to Ketterling's constitutional argument. Rather, the state relies on *Mrozinski* to demonstrate that the statutory requirements were met for establishing a threats-of-violence crime. But that analysis is relevant only to the question of whether the evidence is sufficient to prove that Ketterling violated the threats of violence statute and not to the threshold question of whether the statute can be constitutionally applied to Ketterling's post. While similar evidence may be relevant to both questions, the legal standards differ. Only if we were to conclude that the post charged in the amended count 2 was a "true threat," and thus unprotected by the First Amendment, would we proceed to consider whether the statutory requirements had been satisfied.

In sum, Ketterling's post charged in the amended count 2 is not a true threat. It is protected speech under the First Amendment. Accordingly, we reverse Ketterling's conviction on that count and remand for further proceedings in the district court to address entry of convictions on counts 3 and 4.

**Reversed and remanded.**