*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A25-0115**

State of Minnesota,
Respondent,

vs.

Dale Duane Fitch,
Appellant.

**Filed January 20, 2026
Affirmed
Ross, Judge**

Crow Wing County District Court
File No. 18-CR-24-3073

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Kelsey Hopps, Crow Wing County Attorney, Brainerd, Minnesota; and

Travis J. Smith, Special Assistant County Attorney, Slayton, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Julia Q. Brady, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Ross, Presiding Judge; Johnson, Judge; and Ede, Judge.

**NONPRECEDENTIAL OPINION**

**ROSS**, Judge

A jury received evidence that Dale Fitch pointed his finger at his neighbor during a heated outburst while telling him, among other things, "I'm gonna fucking kill you and bury you in Stillwater." Fitch argues on appeal from his conviction of making threats of

violence first that the jury did not receive sufficient evidence to find him guilty because his statement was an expression of transitory anger rather than an actual threat to commit a violent crime and second that, because his statement was not a true threat, it falls under the protection of his First Amendment right of free speech. Because we hold that the evidence supports the jury's finding that Fitch's statement was a true threat to commit violence, both arguments fail, and we affirm.

## FACTS

This appeal arises from a threats-of-violence conviction after the state charged Dale Fitch with committing the crime and a Crow Wing County jury heard testimony describing the following circumstances.

An owner of Brainerd commercial property was outside on one of his lots conversing with a construction contractor one morning in August 2024 when an altercation occurred involving Fitch. Fitch, who resided on the bordering parcel, suddenly approached the two men and abruptly interrupted their discussion.

The neighbor, who had previously secured a trespass order barring Fitch from his property, testified about the altercation. He described Fitch as having red eyes and being "haggard," "unshaven, unclean," "aggressive," "trembling," and "disheveled." The neighbor told Fitch he was trespassing and had to leave. Fitch then hurled insults, calling him a "fucking idiot" multiple times. Fitch rushed to within two feet of the neighbor. "[I]t was like a charge at me," he recounted. "He was pointing at me." The neighbor recalled Fitch's words, which he characterized as "bone chilling": "I mean he -- he threatened . . . he told me that he was gonna take me to Stillwater and bury me." He understood Fitch to

2

mean, "That he was gonna kill me and that he knew where he was gonna take me after killing me. That's what I took from that for sure."

The 240-pound contractor also recounted the episode, describing Fitch's demeanor as "very, very upset" and "[m]ad, mad, mad, like almost crazy mad." He added, "I was worried, and it takes a lot to get me worried." He testified, "[Fitch] ran at [the neighbor] and that's when I got nervous myself when he ran at [the neighbor] because I thought he was gonna tackle him and do something to him." He continued, "[H]e said he was gonna effing kill him and bury him in Stillwater," before specifying what he meant by "effing," "He said fucking kill him." The contractor said that there was nothing "fuzzy" about his memory and that he was certain he heard Fitch say, "I'm gonna fucking kill you." He clarified the sequence, testifying, "[Fitch] made that threat and then charged him." He wondered in the moment, "[O]h my God am I gonna have to go to the back of the truck and get a tire iron to help . . . or am I gonna have to hit this guy . . . or what am I gonna do here?"

The jury found Fitch guilty, and the district court convicted him of making reckless threats of violence under Minnesota Statutes section 609.713, subdivision 1 (2024). The district court sentenced Fitch to serve 24 months in prison.

Fitch appeals.

## DECISION

Fitch offers two arguments to contest his conviction. He argues first that the evidence was insufficient to prove that his communication caused his neighbor to reasonably apprehend that he would commit a crime of violence. And he argues second

3

that the threats-of-violence statute is unconstitutional as applied to him because his statement was protected speech under the First Amendment. Neither argument is convincing.

## I

Fitch contends that the state's evidence was insufficient to support his conviction. This evidence-insufficiency argument leads us to review the record in the light most favorable to the conviction and determine whether the evidence and its reasonable inferences would allow the jury to conclude that Fitch was guilty beyond a reasonable doubt. *State v. Griffin*, 887 N.W.2d 257, 263 (Minn. 2016). In doing so, we assume that the jury believed the evidence favoring the verdict and disbelieved any contradictory evidence. *Id.* A person makes a criminal threat of violence if, among other alternatives, he "threatens, directly or indirectly, to commit any crime of violence with purpose to terrorize another . . . or in a reckless disregard of the risk of causing such terror." Minn. Stat. § 609.713, subd. 1. The supreme court has construed the statute within the constraints of the First Amendment to mean that a threat of violence involves four elements: (1) words or actions that communicate the defendant's intention to injure another or his or her property; (2) the threat is to commit one of the statutorily defined crimes of violence; (3) the words or conduct create a reasonable apprehension that the defendant will act on the threat; and (4) the defendant made the violent threat consciously disregarding "a substantial and unjustifiable risk that [his] words or conduct will cause extreme fear." *State v. Mrozinski*, 971 N.W.2d 233, 240 (Minn. 2022). A "crime of violence" includes physical assault and intentional killing. *See* Minn. Stat. § 609.713, subd. 1; Minn. Stat. § 609.1095, subd. 1(d)

4

(2024) (listing as crimes of violence those statutes that criminalize assault in the first, second, and third degree, as well as statutes criminalizing murder and manslaughter). Fitch concedes that telling his neighbor that he would "fucking kill" him references a crime of violence, and he contends only that the evidence fails to support the idea that his words were not merely "expressions of transitory anger."

We begin by rejecting Fitch's position that we address whether a threat occurred as a matter involving circumstantial rather than direct evidence. "A threat is a declaration of an intention to injure another or his property by some unlawful act." *State v. Schweppe*, 237 N.W.2d 609, 613 (Minn. 1975). And "[t]he test of whether words or phrases are harmless or threatening is the context in which they are used." *Id.* Circumstantial evidence requires the fact-finder to infer whether a disputed fact existed, while direct evidence requires no inferential reasoning. *State v. Harris*, 895 N.W.2d 592, 599 (Minn. 2017). Direct evidence includes witness testimony asserting the disputed fact based on the witness's personal knowledge or observation. *State v. Horst*, 880 N.W.2d 24, 40 (Minn. 2016). We are satisfied that the state provided direct evidence on the challenged elements here.

The direct evidence came by way of trial testimony. Both the victim-neighbor and the witnessing contractor testified directly, recounting the substance of Fitch's threatening words. They also testified asserting directly that, based on those words and Fitch's aggressive demeanor and confrontational actions, they feared that he would act violently, consistent with his words. This testimony constitutes direct evidence of both the fact that a threat occurred and the fact that the witnesses were apprehensive that Fitch would act on

5

his threat. The supreme court faced a similar question in *Schweppe* based on direct evidence from witnesses who heard the defendant say that "he wanted to kill Doug and his mom," and the *Schweppe* court applied a similar analysis to reach a conclusion like the one we reach today:

> Defendant's alleged statements in this case clearly constituted a threat to inflict personal injury. If the jury believed the unrefuted testimony of the prosecution witnesses, as we must assume from the verdict, then there was ample evidence to support the conclusion that defendant on May 7, 1973, threatened to kill Douglas Grotte and his mother, Corine Grotte. Obviously, such threats involved a "crime of violence" prohibited by our homicide statutes . . . .

237 N.W.2d at 612–14. Based on the direct testimony summarized above, we hold that the state provided direct evidence, that the evidence supports the finding that Fitch threatened to kill his neighbor, and that this threat involved a crime of violence.

Whether the victim-neighbor's directly proved apprehension was reasonable is also not a factual matter involving an inferential, circumstantial-evidence inquiry. Fitch correctly recognizes that the reasonable-apprehension component is a matter that reviewing "courts must decide." Fitch's "chilling" words—delivered in a deliberate tone and presented in the context of his ongoing conflict with his neighbor whom he engaged with aggressive physical actions—provide sufficient ground for the jury to have found the neighbor's apprehension to be reasonable.

We are not led to a different conclusion by Fitch's effort to cast his conduct in terms of mere "transitory anger." The effort would misdirect us from our limited duty on appeal in this case, and it would require us to give the term "transitory anger" undue consideration.

6

The term "transitory anger" was first included in the commentary to the Model Penal Code section on which Minnesota built the threats statute: "In drafting legislation penalizing threats, we would not wish to authorize grave sanctions against the kind of verbal threat which expresses transitory anger *rather than settled purpose . . . to terrorize the other person*." Model Penal Code § 211.3 cmt. (Tentative Draft No. 11 1960) (emphasis added); *see also Schweppe*, 237 N.W.2d at 398 (discussing the threats statute's legislative history). The term as first used therefore references the question of a defendant's intention to terrorize. *See State v. Marchand*, 410 N.W.2d 912, 915 (Minn. App. 1987) ("[T]o warrant reversal based on appellant's argument, this court must [determine] that the evidence indicates he acted not out of an intent to terrorize but rather in the midst of transitory anger."), *rev. denied* (Minn. Oct. 21, 1987). But the defendant's intent to terrorize is not always relevant, and it is not relevant here. Unlike the originating section of the model code about which the drafters were commenting, the version of the Minnesota statute under which Fitch was convicted criminalizes not only threats arising from the speaker's intent to terrorize but, alternatively, threats that arise from the speaker's "reckless disregard of the risk of causing such terror." Minn. Stat. § 609.713, subd. 1. The single-count criminal complaint establishes that the state charged Fitch specifically under this reckless-disregard basis rather than any alleged intent to terrorize, stating, "Charge: Threats of Violence - Reckless Disregard Risk." And the jury was instructed that it could convict Fitch on this ground. The jury then found him guilty exactly as charged: "We the jury find the Defendant guilty of the charge[] of Threats of Violence - Reckless Disregard Risk in violation of Minnesota Statute section 609.713, subdivision 1." The warrant of

commitment likewise describes Fitch's crime of conviction as "Threats of Violence - Reckless Disregard Risk." To be clear, our role is not to second-guess the fact-finder as to Fitch's purpose. But even if it were, Fitch's transitory-anger argument would fail because the conviction does not rest on his intent to terrorize.

In sum, we are satisfied that the jurors here were provided the words in substance and context sufficient to find Fitch guilty on the single count charged. We therefore hold that the evidence supports the conviction.

## II

We are also unconvinced by Fitch's First Amendment argument. The First Amendment generally recognizes a person's right to speak freely and safeguards it from governmental infringement, U.S. Const. amend. I, but "[t]rue threats of violence, everyone agrees, lie outside the bounds of the First Amendment's protection." *Counterman v. Colorado*, 600 U.S. 66, 72 (2023); *see also Mrozinski*, 971 N.W.2d at 245–46. Fitch presents his free-speech rationale in a single paragraph:

> Fitch's alleged threat to kill [his neighbor] was a sentence said right in the middle of a rant meant to convey Fitch's dislike of [him]. Insults, not additional threats, bookended the comments at issue. Fitch did not have a weapon. He did not have a means of transportation readily available, which would have been necessary if he were to carry out the specific threat he is accused of making. His words, while distasteful and callous, were not "true threats." Fitch's comments should be considered protected speech under the First Amendment, and this Court should conclude section 609.713 is unconstitutional as applied here.

His free-speech argument fails.

8

Fitch's argument reflects a misunderstanding of the "true threats" exclusion from constitutional protection. A comment "can count as . . . a [true] threat based solely on its objective content." *Counterman*, 600 U.S. at 72. In the same way that falsely yelling "Fire!" in a crowded theater is unprotected because of the immediate danger the words create, *see Thomas v. Collins*, 323 U.S. 516, 536 (1945), recklessly threatening a crime of violence is unprotected because of the immediate terror the words create, *see Mrozinski*, 971 N.W.2d at 245–46. Fitch's implied premise that a threat is not a *true* threat unless the threatener has shown the ready means to "carry out the specific threat" finds no support in any First Amendment precedent he cites or that we are aware of. To the contrary, the constitutionally authorized prohibition on true threats legitimately protects individuals from three alternative and independent harms. It protects first from "the fear of violence," second, "from the disruption that fear engenders," and third, "from the possibility that the threatened violence will occur." *Virginia v. Black*, 538 U.S. 343, 359–60 (2003) (quotation omitted). The objective content of Fitch's words in context caused his neighbor and the contractor to reasonably fear a crime of violence generally, and this makes his words a true threat. We acknowledge that his words might alternatively have caused the men *specifically* to fear murder and offsite burial if Fitch had, say, also brandished a weapon and jingled his car keys to accentuate his threat in literal fashion. But this sort of particularized evidence to validate a particularized fear that a defendant will execute a particularized threat to commit a crime of violence is simply not necessary to except a threat from constitutional

protection. Because Fitch's words in context comprised a true threat, his as-applied constitutional challenge to the threats-of-violence statute fails.

**Affirmed.**